RECEIVED

AUG 3 1 2023

Wendy R Oliver, Clerk
U.S. District Court
W.D. OF TN, Memphis

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

Francois Johnson Sr,

        Plaintiff,

vs.

                            Civil No.

MID WEST WAREHOUSE
DISTRIBUION SYSTEMS, RYDER
SYSTEMS , Mike Bramblett, Janice Brandner , Carly Ball,
Adam James, Nina Nguyen, Britt Jernigan
Ladaton Hines, Marquita Weaver

        Defendant.

---

## PLAINTIFF AFFIDAVIT OF FACTS IN SUPPORT OF CIVIL COMPLAINT

Plaintiff   Francois Johnson, files this Complaint based on Age discrimination and Retaliation
Plaintiff Wish is not hold Plaintiffs to the same stringent standards as that of a schooled
attorney.  See **Haines v, Kerner**, 404 U.S. 519.

### JURISDICTION AND VENUE

This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331,
Venue is proper in this District under 28 U.S.C. § 1391(b)(1)-(2) and (c)(1)-(2). The U.S. Equal
Employment Opportunity Commission ("EEOC") is charged by Congress with interpreting,
administering, and enforcing various federal laws against employment discrimination, including
Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq., and the Age

1

Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 et seq. This case raises an important issue concerning when an internal complaint to an employer is sufficiently specific to constitute protected opposition under the antiretaliation provisions of Title VII and the ADEA.

<u>**Statement of Facts**</u>

(1). June 21,2022 , after filing with  EEOC ,  the charge **No. 490-2022-01539,( Exhibit No. 1 complaint and right to sue, (2) pgs), No. 490-2022-01540 ( Exhibit  No. 2 complaint and right to sue (2) pgs )**

, based on Retaliation, and Age discrimination against both Midwest Distribution Warehouse.

(2).I was hired by the above named employer as a forklift driver November 4, 2019.

(3).In July 2021, I became aware that my pay was lower than my younger co-workers.

(4). I sent multiple emails to Facility Manager Mike Bramblett ; however , no response was given.

(5).I escalated my complaint to Human Resources; however no response was given.

(6). In January 2022, I became aware of a lead position opening for my shift.

(7).I expressed an interest in applying to my supervisor Tony Hines, and Mike Bramblett.

(8).On March 23, 2022, I was interviewed for the position and told I was highly qualified as I had been filing the position during its vacancy.

(9). On April 14, 2022, I became aware that the position had been filled.

(10). I inquired as to why I was not selected.

(11).Mike Bramblett informed me that I was not selected due to attendance issues; however, I have received no disciplinary actions for attendance, nor have I had any issues with attendance.

(12).I believes I was retaliated against by not receiving the promotion due to my multiple complaints about my wages.

(13).I believes I have been discriminated against due to my age (52) and retaliated against in violation of the Age in Employment Discrimination Act of 1967, as amended.

(14).Again on February 15, 2023 against specifically Ryder Systems Inc. **No. 490-2023-01321. (Exhibit No. 3, EEOC complaint and right to sue (2) pgs)**

2

(15). Complaint stating I began my employment with the above –named company on November 4,2019 as a forklift driver, because Ryder bought out Midwest in late 2021, and assumed all rights and privileges, policies of Midwest.

(16).On June 21, 2022, I filed a charge of discrimination with the EEOC (No. 490-2022-01540)

(17).On October 27, 2022, I received a separation Notice that indicated I was being terminated due to a reduction in force.

(18). In addition, I was denied a severance package.

(19).The last day I worked was October 28, 2022.

(20).On November 1, 2022, I learned younger employees affected by the reduction in force, were allowed to transfer to the other facilities but I was denied.

(21).I believes I was discriminated against because of my age (52) and in retaliation for filing a previous in violation of the Age Discrimination in Employment Act of 1967, as amended.

### Age Discrimination Claims

Under both the ADEA and Title VII, a plaintiff establishes a prima facie case of retaliation by showing that (1) the plaintiff engaged in protected activity; (2) the defendant knew of the protected activity; (3) thereafter, the defendant took an adverse action against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action. *Wasek v. Arrow Energy Services, Inc.*, 682 F.3d 463, 468-69 (6th Cir. 2012) (defining prima facie elements of a Title VII retaliation claim); *Spengler v. Worthington Cylinders*, 615 F.3d 481, 491-92 (6th Cir. 2010) (same, but as to elements in an ADEA retaliation claim).

*Mulhall v. Ashcroft*, 287 F.3d 543, 552 (6th Cir. 2002) (stating that a plaintiff need only present "evidence sufficient to establish that the individuals charged with taking the adverse employment action knew of the protected activity"

Plaintiff complaint is sufficiently specific to constitute protected activity under the anti-retaliation provisions of Title VII and the ADEA.

(22). I had been working for Defendant Midwest on the 6th assisting Ms. Marquita Weaver since July 2021 from 11 pm to 7 am on the weekends, that soon turned into weekdays before I was finally removed from my first shift working in the inventory department my original department. **(Exhibit No.48 )**

(23). Ms. Weaver , had no employees for a few months, so Mike Bramblett was asking for volunteers for her shift so I worked the shift and Ms. Weaver trained me as her unofficial shift lead.

3

(24). Plaintiffs jobs consist of the following, picking and staging loads to be loaded out, I was never reprimanded for staging loads in correctly under Ms. Weaver or Mr. Tony Hines.

(25). Plaintiff job consist of unloading trucks, I was never reprimanded for improper unloading of trucks under Ms. Weaver or Mr. Tony Hines.

(26). Plaintiff also had to load trucks; I have never been reprimanded for improper loading of trucks under Ms. Weaver or Mr. Tony Hines.

(27). Defendant Midwest cannot dispute that on December 30,2021, Plaintiff complained to Mr. Bramblett about his pay ,telling him it wasn't fair ( Ehibit No. 7 ).

(28). Plaintiff sent a few emails to Mike Bramblet asking about his wages, but Defendant Bramblet never ever replied back, this was before I applied for the lead person position.

(29). Defendants cannot dispute ,Plaintiff sent emails to the H R representative Nina Nguyen who was hired later on about not getting a raise on February 9,2022 , and she had never responded either. **(Exhibit No. 8)**

(30). Defendant Ryder cannot dispute, that according to its Absentee Policy Plaintiff did not meet the threshold to be terminated from employment, based off number of reprimands.

(31). Defendant Ryder cannot dispute to have known before Plaintiff termination on October 28,2022, that Plaintiff had attendance reprimands.

(32). Defendant Ryder cannot dispute that Plaintiff reported to EEOC that younger employees transferred to Olive Branch warehouse after his employment was terminated.

(33).Midwest had no posting on bulletin boards where employees gather or clock in about who to contact on harassment, retaliation.

(34). Defendant Ryder cannot dispute, that the company communicated to the Olive Branch warehouse Plaintiff attendance and performance was abysmal.

(35). Defendant Midwest /Ryder while in business had a past practice of hiring shift leads from that specific employee shift.

(36).Defendants cannot dispute 1st shift, it was Darryl Perry, shift lead; Plaintiff was hired before he was.

(37). Defendants cannot dispute 2nd shift: it was a temporary black male named Quentin Stewart was shift lead.

(38). Defendants cannot dispute 3rd shift, Jamarcus Arnold, was shift lead, until he was promoted Supervisor .

4

(39). Defendants cannot dispute October 14, 2022; Plaintiff received a **termination notice** and it went into effect on Oct. 28,2022 ,but unlike other employees younger than Plaintiff, Plaintiff was denied a transfer to Ryder warehouse facility in Olive Branch Mississippi. **(Exhibit No.4)**

(40). Defendants cannot dispute; Plaintiff emailed on November 2, 2022 Plaintiff was denied a severance package. **(Exhibit No.9)**

(41). Defendants cannot dispute Ryder after purchasing Midwest passed out welcome packets to the permanent employee's document labeled "*Midwest Warehouse / Ryder Employee Q&A* "

*( Ehibit No.5 )*

(42).On Page 1, Paragraph 5, under topic "what is employment status with Ryder? Your Midwest Warehouse employment status will remain the same under Ryder's ownership and you will not be required to complete an application, be interviewed, or be subject to any other pre-employment screening if you are currently a full-time Midwest employee. "( **See Exhibit No. 5)**

(43). On Page 2, Paragraph 8. "Will our policies and procedures changes" Following the purchase on November, 1, 2021, you will receive some core Ryder policies you r review and acknowledgement. **(See Exhibit No.5)**

(44). Defendants cannot dispute that before Plaintiff in April 14, 2022, that Plaintiff had no reported performance issue after Ryder acquired. **(See Exhibit No.10)**

(45). Defendants cannot dispute that before Plaintiff in April 14, 2022, that Plaintiff had no reported attendance issue after Ryder acquired.

( 46 ). Defendants cannot dispute Ryder never expressed or implied that to be transferred to the Olive Branch warehouse that employee would need to file an application and interview and attendance and performance would be the qualifications to transfer to the Olive Branch Mississippi warehouse.

( 47 ). Defendant Ryder discriminated against Plaintiff age, by transferring to the Olive Branch Ms. Plant co-workers that worked at the Memphis Warehouse based on the reduction of force coming off retention , but when Plaintiff retention period was up, Ryder did not send Plaintiff's paperwork , name over to the Olive Branch Mississippi warehouse as Ryder did for the other reduction affected employees.

(48). The Plaintiff was treated differently than other than other reduction of force employee off retention, because they were allowed to transfer to the olive Branch Mississippi facility because Mike Bramblett the Ryder Warehouse manager turned their names in to that facility and when Plaintiff time was up, Mike Bramblett did not turn in Plaintiff name to the Ryder facility in Olive Branch Mississippi.

5

(49). Defendant Ryder cannot dispute, **November 1, 2022 email** ,Plaintiff inquired about why his name was not turned in by Mike Bramblet , Plaintiff was told his attendance and performance was the reason by HR Carly Ball. in response to HR answer, Plaintiff told Carly Ball that the company has caused him economic harm, causing a hardship. **( Exhibit No.6, pg. 1&2)**

(50). Plaintiff did not apply to any other Ryder job listings because Mike Bramblet was the reported contact person for Ryder and his refusal to send my information to the Olive Branch Plant deterred me from applying to any other Ryder facility, because he was divulging my attendance and performance that was unfair practice against Plaintiff. **( Exhibit No.6, 2pgs)**

(51). Plaintiff was a fully time employed employee of Defendant Ryder Systems.

(52).Defendant Ryder did not have in Place an attendance policy in affect after its acquiring Midwest, and no performance policy in place.

(53).Defendant Ryder cannot dispute, Plaintiff complained about the Ryder taking Plaintiff's PTO calling it a policy May 27,2022, but admitting it is not in fact a company policy June 6, 2022. **(exhibit No. 11, exh. # 12)**

## Retaliation Claims

Title VII forbids employers from retaliating against employees who oppose employment

practices that may be unlawful under Title VII. 42 U.S.C. § 2000e–2(a)(1); see also Yazdian v.

ConMed Endoscopic Techs.. Inc., 793 F.3d 634, 646 (6th Cir. 2015). A claim for retaliation can

be proven with either direct or circumstantial evidence. See Spengler v. Worthington Cylinders.

615 F.3d 481, 491 (6th Cir. 2010).  Id.; See Laster v. City of Kalamazoo, 746 F.3d 714, 730 (6th

Cir. 2014); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–04 (1973); Texas Dep't of

Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981).

The Supreme Court has defined retaliation as an intentional act in response to a protected action.

Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 173-74 (2005). Citing Jackson, the court in

Gutierrez underscored the intentional nature of a retaliation complaint: "Retaliation is, by

definition, an intentional act. It is a form of "discrimination" because the complainant is being subjected to differential treatment." Gutierrez, 2005 WL 2346956, at *5. The complained of matter need not be a complaint; it can be any lawful conduct that an individual engages in connected with a protected right. "The very concept of retaliation is that the retaliating party takes action against the party retaliated against after, and because of, some action of the latter." Fed. Mar. Bd. v. Isbrandtsen Co., 356 U.S. 481, 514 (1958). It carries with it the notion of "getting even." See id. As noted in a 2011 law review article:

Retaliation is a deliberate action used to send a clear message that complaining is unwelcome and risky. It is employed to instill fear in others who might consider making a complaint in the future. Those with cause for complaining are frequently among the most vulnerable in an institution. Once they complain, they are labeled "troublemakers." Retaliation, and the fear of retaliation, becomes a potent weapon used to maintain the power structure within the institution.

*Boyer-Liberto*, 786 F.3d at 282, 268 ("[A]n employee is protected from retaliation when she reports an isolated incident of harassment that is physically threatening or humiliating, even if a hostile work environment is not engendered by that incident alone."); *see also Magyar v. Saint Joseph Reg'l Med. Ctr.*, 544 F.3d 766, 771 (7th Cir. 2008) (explaining that a plaintiff need only have a "sincere and reasonable belief" that she was opposing an unlawful practice, so the conduct complained of need not have been persistent or severe enough to be unlawful, but need only "fall[] into the category of conduct prohibited by the statute"); *Baldwin v. Blue Cross/Blue Shield of Ala.*, 480 F.3d 1287, 1307 (11th Cir. 2007) (reasoning that the *Faragher-Ellerth* "design works only if employees report harassment promptly, earlier instead of later, and the sooner the better").

7

The causal connection factor requires the plaintiff to "produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not filed a discrimination action." Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir. 2000). Evidence that the defendant treated the plaintiff differently from similar employees, or evidence

that the adverse action and the plaintiff's exercise of his rights occurred within a short time, can support a finding of causation. a materially adverse action. FedEx argued that because the alleged material adverse action happened prior to the first EEOC complaint, it could not have "retaliated" against the plaintiff. *Id.* at *6-7. But the court held, in contrast, that a "plaintiff seeking Title VII's protection against retaliation need show only 'that a reasonable employee would have found the challenged action materially adverse,' which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at *7 (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 58-69 (2006)). The court posited that the showing required for a Title VII retaliation claim is "less burdensome than what a plaintiff must demonstrate for a Title VII discrimination claim." *Id.* (citations omitted).

The court concluded that, "[v]iewed under the correct standard, a reasonable factfinder could find that a number of the actions [the plaintiff] testified about would be sufficient, on their own or in combination, to dissuade a reasonable worker from filing or pursuing an EEOC complaint." *Id.* Particularly egregious to the court was FedEx allegedly placing the plaintiff "under close surveillance," subjecting her "to numerous disciplinary write-ups," and writing her "up for unexcused absences even when she provided doctor's notes excusing these absences." *Id.* The court found that "[e]ach of these actions 'might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.*

Blizzard v. Marion Technical College, 698 F.3d 275, 288-89 (6th Cir. 2012) (oral complaint

qualified as protected opposition, where the plaintiff told the Director of Human Resources that

she was "treated differently than younger employees"); Trujillo v. Henniges Automotive Sealing

Systems North America, Inc., No. 11-1148, 2012 WL 3570654, at *2-4 (6th Cir. Aug. 20, 2012)

*Burlington N. & Santa Fe Ry Co. v. White*, 548 U.S. 53, 59 (2006) (discussing the term

"discriminate against" in Title VII's antiretaliation provision, stating that "[n]o one doubts that the

term 'discriminate against' refers to distinctions or differences in treatment that injure protected

individuals").

In *Harrison v. Metropolitan Gov't of Nashville and Davidson Cnty., TN*, where fifteen months

elapsed between the plaintiff's EEOC charge and termination, this Court held that evidence that

several employees feared retaliation for testifying at the plaintiff's hearing, and comments by the

plaintiff's direct supervisor suggesting "he would not hesitate to run employees out of

his department," were sufficient to establish a prima facie case.  80 F.3d 1107, 1118-19 (6th Cir.

1996), *overruled on other grounds by Jackson v. Quanex Corp., 191 F.3d 647, 667 (6th Cir.*

*1999)*.

Moreover, the court affirmed punitive damages for the plaintiff. To recover punitive damages, a

plaintiff must demonstrate, among other things, that the "individuals perpetrating the

discrimination acted with malice or reckless indifference toward the plaintiff's federally protected

right. A plaintiff satisfies this prong by demonstrating that the individual in question acted 'in the

face of a perceived risk that its actions will violate the law.'" *Id.* citing (*Kolstad v. American*

*Dental Assoc.*, 527 U.S. 526 (1999)). Notably, the employer is vicariously liable for the actions

of its managers or supervisors if it fails to engage in "good faith efforts to comply with Title

VII." *Id.*  In affirming the punitive damages verdict, the court held that a "reasonable factfinder

could determine that, despite its formal anti-discrimination policy, FedEx did not engage in

good-faith efforts to comply with Title VII." *Id.*

9

*Blair v. Henry Filters, Inc.*, 505 F.3d 517, 530, 533 (6th Cir. 2007), *abrogated on other grounds by* <u>Gross v. FBL Financial Services, Inc., 557 U.S. 167, 178 n.4 (2009)</u>), the foregoing evidence of retaliatory animus would also allow a reasonable factfinder to conclude that Skyline fired McKinley in retaliation for her complaint, and not for deficient performance, particularly in light of evidence — discussed in further detail below — disputing the factual bases for the company's negative evaluations of her performance. *See Blair*, 505 F.3d at 530, 533 (acknowledging that plaintiff's evidence in support of his prima facie case of age discrimination could alone "suffice to show a genuine issue of material fact concerning pretext" and ultimately holding that evidence of animus comments satisfied both his prima facie case of age discrimination and created a triable issue as to whether the defendant's reduction-in-force was pretextual). (*Blair v. Henry Filters, Inc.*, 505 F.3d 517, 530, 533 (6th Cir. 2007), *abrogated on other grounds by* <u>Gross v. FBL Financial Services, Inc., 557 U.S. 167, 178 n.4 (2009)</u>), the foregoing evidence of retaliatory animus would also allow a reasonable factfinder to conclude that Skyline fired McKinley in retaliation for her complaint, and not for deficient performance, particularly in light of evidence — discussed in further detail below — disputing the factual bases for the company's negative evaluations of her performance.

(54). Defendant Ryder cannot dispute that on May 23, 2022, Plaintiff reported that a scanner had exposed wire cables placed on scanners by a member of management team,  and it punctured his hand, Plaintiff believes this to be retaliation . (**See Exhibit No.13**)

(55). Plaintiff believes a jury could find it suspicious that Defendant Ryder and representative first brought up performance and attendance issue on May 25, 2022, only after Plaintiff complained recently about April 14, 2022, denied promotion and its investigation, and later exposed wire incident. **( Exhibit No.14 )**

(56). Defendant Ryder cannot dispute that  June 8, 2022 was first instance in the record where Ryder Systems  singles out attendance as a problem; with no citation to documentation reflecting performance deficiencies prior to that time. ( **Exhibit No.15**)

(57). Defendant Ryder cannot dispute that on June 8, 2022, Plaintiff was reprimanded with a Written Counseling notice specifying May 25th, 26th, 27th, and June 3 2022, which was conveniently the days Plaintiff was asking for a meeting, asking about PTO in retaliation. **(Exhibit No.16), (Exhibit No.23 )**

(58).Defendant Ryder on February 9, 2022, received an email from Plaintiff complaining to Ms Nguyen - Human Resources and Mike Bramblet about his wage difference**. (Exhibit No. 17)**

(59). Defendant Ryder's Human resources Nina Nguyen, Britt Jernigan also, was informed in the April 14, 2022 email that Plaintiff before this email had no reprimands for attendance before April 14, 2022.

(60). Defendant Ryder management team , on April 14, 2022, received an email from Plaintiff reporting to the warehouse Human Resources Nina Nguyen complaining that Plaintiff had been discriminated against by being denied a promotion by Mike Bramblet alleging Plaintiff had attendance issues. **(Exhibit No. 10)**

(61). Defendant Ryder's local warehouse HR Ms. Nguyen, or any HR representative personally investigated into any of Plaintiff complaint, every reprimand Nguyen was not present, had **knowledge** but did nothing in retaliation. **(Exhibit No. 18)**

(62).Defendant Ryder cannot dispute Plaintiff reported the wire incident complained of pain from the incident was off for May 24.2022. **(Exhibit No. 16, & 20 ),**

(63).Defendant Ryder's cannot dispute email date June 16, 2022, that Compliance and Ethics dept. Adam James took plaintiff complaint in early April 2022. **(Exhibit No. 24)**

(64).On May 20, 2022, Compliance & Ethics, Employee Relations Lead, Adam James sends email saying investigation completed. **(Exhibit No. 19)**

11

(65).Defendant Ryder on May 23, 2022, Plaintiff reported to the management team that a wired

piece of equipment, had exposed wires that had punched his hand, and Plaintiff had to get a

tecna shot. **(Exhibit No. 21)**

(66).On May 25, 2022, Plaintiff was called in the conference room with his Supervisor Mr. Hines

conveniently addressing attendance after the April 14, 2022 email to HR –Nguyen, and

Manager Jernigan. **( Exhibit NO.20 )**

(67).On May 26, 2022, Plaintiff sent an email to HR –Nguyen, the management team which

includes supervisors addressing the attendance issue documents, and informed them that

Ryders Mr. Adam James would need the ledge able copy, but Plaintiff was retaliated against for

requesting clarity.. **( Exhibit NO.22 )**

(68).Defendant Ryder and its HR and management team on May 27, 2022, Plaintiff sent an

email pleding for a good copy of the time card punches, because the punches were not clear, so

defendant Ryder retaliated with a written counseling, to intimidate Plaintiff with harassing

charges.. **(Exhibit NO. 23)**

(69).On June 3, 2022, Plaintiff sent again to HR, and the management teams an email asking

for documents, supporting taking Plaintiff PTO without him requesting using the written form,

and requesting on ADP system, because he got no response. **( Exhibit NO.11 )**

(70).On June 4,2022, Plaintiff  sent email telling Ryder management team  that his PTO time

was being taken , someone would go in ADP and request my PTO, and my supervisor would

sign off on it, or Mike Bramblett would , and I wanted it investigated..**( Exhibit NO.23 )**

(71). On June 8, 2022. Defendant Ryder and its HR –Nguyen who was not present, and Mr.

Jernigan ,Supervisor - Tony Hines retaliated with a " written counseling " reprimand alleging that

Plaintiff asking for clearer copies of documents, wanting a meeting to discuss the attendance

12

policy posted by the time clock, I wanted my PTO issue to be investigated, said that I was harassing and subject to an investigation. This was the defendants' way to intimidate Plaintiff from going against management, they stated harassing Plaintiff.( **Exhibit NO. 16)**

(72).On the same date June 8, 2022. The defendants gave Plaintiff a verbal warning for the dates 01-01-22 through 04-21-22 in retaliation for complaining retaliation on April 14, 2022 and wages, while Ryder still had posted by the time clock there will be no penalty for attendance, screenshot taken on May 8, 2022 at 6:50 am, before Plaintiff clocked. **(Exhibit No.23)**

(73).On June 8,2022, Plaintiff sent an email to HR and the management team complaining of being bullied by management, and sent pictures of PTO being taking, without being requested, all while the compliance and ethic department is investigating my complaint, telling them that this is retaliation. **( Exhibit No.25)**

(74).On June 14, 2022, in retaliation Plaintiff received a written warning reprimand for dates 04/22/22 thru 05-23-22, in retaliation for complaining about the discrimination by way of retaliation. (**Exhibit No.26 )**

(75).Defendant Ryder cannot dispute that on June 14, 2022,Plaintiff sent an email stating the written warning  Plaintiff received , this reprimand has the exact same accumulated points 33.5 points in ( 7) seven days . **(Exhibit No. 27, No. 29 )**

(76).On June 15, 2022, Plaintiff told management and HR –Nguyen that this is nothing, but retaliation for my complaining. **( Exhibit No.28, two pages )**

(77).Defendant Ryder Compliance & Ethics, on June 16,2022 was informed by Plaintiff that since his investigation started management has written Plaintiff up. **(Exhibit No.30)**

13

(78).Plaintiff contacted Mr. Adams James, at Compliance & Ethics about the previous investigation, he said the investigation was closed, Plaintiff asked what was the results of the investigation, I was informed it was confidential. **(Exhibit No. 19)**

(79). Plaintiff informed Mr. James about the reprimands, Mr. James responded he closed the investigation on May 20,2022. Mr. James responded to know about the reprimands, Plaintiff asked him, you knew and still closed the case before investigating. Mr. James refused to put Plaintiff 2nd complaint in writing, objected to Plaintiff having a tape recording at the conference call, so Plaintiff respectfully declined the conference call, and asked Mr. James to investigate and Mr. James of Compliance and again Ethics department refused. **( Exhibit No.31)**

(80).Plaintiff on several occasions asked the Human Resources Ms. Nguyen for meetings, to investigate Plaintiffs's, allegations of bulling, and harassment, but she constantly ignored the Plaintiff request, in retaliation, dated June 28,2022, and July 23,2022 **( Exhibit  No. 32, No. 33 )**

(81).Plaintiffs Supervisor aka "Tony Hines "( Ladaton Hines) has never written Plaintiff up for attendance or performance, but out of retaliation with the other HR and Management team  to tarnish Plaintiff record, signed off on every reprimands, dated July 15,2022.. **( Exhibit No.34 )**

(82).Defendant Ryder cannot dispute in an email dated August 1,2022, referenced a meeting took place of July 26,2022, Plaintiff asked for clarity from Ms. Nguyen- Human Resources seeking to know the date Mr. Bramblett stated the attendance policy was back active. **( Exhibit No.35 )**

(83).Defendant Ryder cannot dispute Plaintiff had written document, that Plaintiff had acknowledge that the attendance policy was back in affect as of January 1,2022

14

(84).Defendant Ryder cannot dispute Defendant Britt Jernigan provided document of Plaintiff stating acknowledging to have known the attendance policy was re-instated active.

(85).Defendant Ryder cannot dispute that Plaintiff supervisor Ladaton Antonio Hines provided document that the posting by the employee time clock was not an active policy, or written plaintiff for attendance, it was Britt Jernigan.

(86).Defendant Ryder's HR Representative Ms. Nguyen never communicated to the Plaintiff the date the attendance policy went back into effect after Plaintiff requested constantly this information.

(87).Plaintiff asked Mr. Jernigan to see the employees' handbook that they could take employees PTO without permission, and HR-Janice Brandner on email said it is not a policy. **(Exhibit No. 11)**

(88).Defendant Ryder cannot dispute in email on February 1, 2022, Plaintiff notified Mike Bramblet about applying for 3rd shift lead. **(Exhibit No. 38)**

(89).Defendant Ryder cannot dispute Plaintiff sent several screenshot emails of the June 8,2022 posting of the inactive attendance policy posting.

(90).Defendant Ryder cannot dispute that once acquiring Midwest, to have also kept by the employee time clock, Midwest inactive attendance policy posting well after Plaintiff June 8, 2022 verbal, and written counseling warning reprimands.

(91).Defendant Ryder cannot dispute that did not follow the Midwest  Warehouse Absenteeism Tracking System once Plaintiff allegedly accumulated (3) points. **(Exhibit No.36, pg. 1)**

(92).Defendant Ryder cannot dispute that did not follow the Midwest  Warehouse Absenteeism Tracking System once Plaintiff allegedly accumulated (6) points. **(Exhibit No.36, pg. 1)**

15

(93).Defendant Ryder cannot dispute that did not follow the "Midwest  Warehouse Absenteeism Tracking System "once Plaintiff allegedly accumulated (8) points. **(Exhibit No.36, pg. 1)**

(94).Defendant Ryder cannot dispute that did not follow the "Midwest Warehouse Absenteeism Tracking System " once Plaintiff allegedly accumulated (10) points. **(Exhibit No.36, pg. 1)**

(95).Plaintiff on 6/16/2022 asked again for my Supervisor Tony Hines, Mike Bramblett , Britt Jernigan, HR-Nina Hines to do a investigation into Mike Bramblett taking my PTO forging my request for PTO, but in retaliation no one investigated that request**. ( Exhibit No.34, Exhibit No. 37)**

(96).Defendant Ryder cannot dispute , Defendant Ryder's EEOC Position statement: Defendant Ryder cannot dispute that .Mr. Johnson racked up 33.5 attendance points between January and April 2021 and received a Verbal Warning as a result. **(Exh. No. 40 pg.2 )**

(97).Defendant Ryder's EEOC Position statement: Mr. Johnson applied for a promotion to Warehouse Lead. Although Ryder interviewed Mr. Johnson and gave his application due consideration, the Company did not select Mr.Johnson for the position due to his abysmal attendance **(Exh. No. 40 pg.2 )**

(98).Defendant Ryder cannot dispute, Defendant Ryder's EEOC Position statement: Employee Relations thoroughly investigated Mr. Johnson's claim of retaliatory treatment, but it was not substantiated. **(Exh. No. 40 pg.2 )**

(99).Defendant Ryder cannot dispute Defendant Ryder's EEOC Position statement :Ryder's Equal Employment Opportunity Policy and Affirmative Action, Policy Against Harassment, Discrimination and Retaliation, Anti-Retaliation policy, and Open Door Process). These policies include an Open Door Process that strongly encourages employees to talk with a Company official, such as a Human Resources employee or another member of management, regarding

16

any work-related concerns they may have without fear of retaliation. Ms. Nina Nguyen never made herself available to meet, but in retaliation drew up a written counseling on Plaintiff **( Exh. No. 16 , last paragraph)**

(100).Defendant Ryder cannot dispute Defendant Ryder's EEOC Position statement: As a Forklift Operator/Material Handler, Mr. Johnson is responsible for: safely operating a forklift to physically and logistically move products; pulling and preparing products for shipment; ensuring that pulled orders are free and are the correct type/quantity; and assisting with other warehouse tasks such as shipping/receiving, loading/unloading, stacking/staging, and scanning. Johnson received no reprimands for these task.( **Exh. No. 40 pg.3)**

(101).Defendant Ryder cannot dispute Defendant Ryder's EEOC Position statement  :Mr. Johnson claims he "complained" to management and HR that he was being paid less than younger employees. However, there is no evidence that Mr. Johnson ever "complained" to Human Resources Specialist Nina Nguyen about his wages; instead, he asked her for an explanation of the February 2022 pay increase, and she referred him to Group Logistics Manager Mike Bramblett. Nor did Mr. Johnson complaint to Mr. Bramblett about allegedly discriminatory pay; rather, Mr. Bramblett explained the pay increase and shift differential to Mr. Johnson more than once. **(Exh. No. 40 pg.3 )**

(102).Defendant Ryder cannot dispute Defendant Ryder's EEOC Position statement :Managers and supervisors in turn reminded employees of the change in policy enforcement during team meetings the week of January 12. Despite this clearly-announced change, Mr. Johnson accumulated 33.5 attendance points between January 1 and April 21, 2022, and on May 25 was issued a Verbal Warning as a result. Ryder cannot dispute; the verbal was two days after Plaintiff reported the exposed wires on the job incident. **(Exh. No. 21 )**

(103).Defendant Ryder cannot dispute, good attendance and good job performance was a criteria for shift lead person position. **(Exh. No. 41 )**

(104).Defendant Ryder cannot dispute Defendant Ryder's EEOC Position statement: Mr. Johnson disputed some of the attendance points, and Operations Manager Britt Jernigan investigated and removed any points that had been entered erroneously. But on June 8, 2022, Plaintiff still had 33.5 points , as on May 25,2022 **( exh. No. 15 & Exh. No. 39)**

(105). Defendant Ryder cannot dispute Defendant Ryder's EEOC Position statement :Notably, when Mr. Johnson protested the Verbal Warning, he told Human Resources Specialist Nina Nguyen he believed the Verbal Warning was issued in retaliation for Mr. Johnson reporting an on-the-job injury on May 23.2022. **( Exhbit 21 )**

(106).Defendant Ryder cannot dispute Defendant Ryder's EEOC Position statement :Mr. Bramblett denies that Mr. Johnson complained to him about temporary worker wages at all, much less that he complained about alleged age discrimination. **( Exhbit 56 )**

(107).Defendant Ryder cannot dispute Defendant Ryder's EEOC Position statement : On April 14, 2022, Mr. Johnson sent an email to Ms. Nguyen in which he alleged that: (1) he had been denied a promotion to third-shift Team Lead in retaliation for being "mentioned in a pending EEOC complaint" and/or because he had emailed Ms. Nguyen, Mr. Bramblett, and Mr. Jernigan "about my shift differential pay and regular hourly work pay increase"; (2) open Team Lead positions had not been properly posted "for employees to apply," nor had the Company's EEO policy; (3) the Company had paid "brand new temporary workers" $17 per hour while he had only received $14.50; and (4) during a meeting two years earlier in March 2020.

Defendant Ryder cannot dispute Defendant Ryder's EEOC Position statement: Ryder addressed with Prologistix the need for its employees' wages to be in line with those paid to

18

(108).Ryder employees as dictated by its contract with the customer. In response, Prologistix adjusted its employees' pay accordingly.

(109).Defendant Ryder cannot dispute, its Position statement: Ryder pays the temporary agency its hourly invoice, knowing what they are paying the employees in their warehouse, tells them to adjust their pay. **( Exhbit 40 )**

(110).Defendant Ryder cannot dispute Defendant Ryder's EEOC Position statement: Defendant Ryder acknowledges it was paying Prologistix employees more than Johnson on 3rd shift+.

(111).Defendant Ryder cannot dispute Defendant Ryder's EEOC Position statement: Separately, Operations Manager Britt Jernigan issued Mr. Johnson a Written Counseling for an extremely unprofessional email he sent to Ms. Nguyen when requesting documentation of his attendance points. **( Exhbit 40 )**

(112). Defendant Ryder cannot dispute Defendant Ryder cannot dispute the same email sent to Ms. Nguyen was also sent to others in the warehouse.

(113).Defendant Ryder cannot dispute Defendant Ryder's EEOC Position statement: Following the interview, the panel discussed whether Mr. Johnson should be promoted and unanimously decided that he should not be promoted due to his unsatisfactory attendance record. (At that time, Mr. Johnson had accumulated attendance points in excess of termination level.) Mr. Bramblett communicated this decision to Mr. Johnson on April 14, 2022 **( Exhbit 40 )**

(114).On 9/27,2022 Carly Ball said she was going to get back with me on the 9/29 date.

(115).On 9/29/2022 Carly Ball still had no documents to show court order from a judge, and the garnishment retaliation continued up to Plaintiff termination date of October 28, 2022.

19

(116).On 10/22/2022 Plaintiff emailed HR- Carly Ball about the termination letter, asking her who approved this action of garnishment without a court order, Carly Ball never answered.

(117).Defendant Ryder and is representative(s) did not provide EEOC a copy of the garnishment document showing court order.

*See, e.g., EEOC v. Boeing Co.*, 577 F.3d 1044, 1052-53 (9th Cir. 2009) (holding that co-worker and supervisors' detailed testimony that claimant's work was significantly better than the low scores she received on the evaluation used for identifying terminations under a reduction-in-force was indicative of pretext); *Dey v. Colt Constr.& Dev. Co.*, 28 F.3d 1446, 1460-61

(118).Defendant Ryder had a notice stating no penalty for attendance located by the employee time c/lock at the time it reprimanded the Plaintiff. **(Exhibit No.23)**

(119).Defendant Ryder causation  or reason for not transferring Plaintiff to the Olive Branch Mississippi warehouse was retaliation because the employees were transferred there because of the reduction in force, and they worked for the Memphis warehouse, but Plaintiff employment was terminated, with no option to transfer.

(120).Defendant Ryder and representative(s) 11/1/2022 .Carly Ball responded to email Plaintiff sent asking about the retaliation for not transferring Plaintiff, quote "Olive Branch facility transferred needed to be in good standing with attendance and performance with company. Based on your performance and attendance you were not eligible for transfer to Olive Branch".. even though Separation notice eligible for rehire without any restrictions. **(Exhibit No.6, 2pgs.)**

(121).Defendant Ryder and Representatives Ball, and Bramblet on 11/2/2022 after Plaintiff was not optioned to transfer, because  Mike Bramblett did not turn in my name to the Ryder plant in Olive branch Mississippi.

(122). Defendant Ryder in its notice of Termination letter to Plaintiff stated the Plaintiff was eligible for rehire, but retaliated by not transferring Plaintiff to the Olive Branch warehouse. **(Exhibit No.46)**

(123). Accordingly, if Plaintiff had not filed a discrimination and retaliation claim, Ryder Inc., would have transferred Plaintiff to the Olive Branch Mississippi branch facility as it did for numerous permanent employees and several temporary employees, which the company also trained employees transferred of different equipment, and jobs.

(124). Defendant Ryder cannot dispute that these employees also had a retention bonus offer. White -female Pamela Hall, Darryl Perry- Black male – shift lead person, Cedric Brown-Black male, Michael Johnson- Black male.

(125).Defendant Ryder cannot dispute that these employees after their retention ended, was transferred to the Olive Branch warehouse: White -female Pamela Hall, Darryl Perry- Black male – Fork lift driver /shift lead person, Cedric Brown-Black male- Fork lift driver, Michael Johnson- Black male- Fork lift driver, clearly retaliation was the but for factor in reference to Plaintiff.

(126).Defendant Ryder transferred these employees to the Olive Branch warehouse before Plaintiff lost employment in October 28,2022 :Ronald Moore-Black Male, Corey Tenor- Black male, Quincy Allen- Black male, but Plaintiff because of his complaining was not optioned to transfer, even though was eligible for rehire, and attendance nor performance was not a factor, but retaliation was. **( see exhibit No.46  )**

21

(127).Plaintiff attendance did not keep Ryder from retaining him for a position. and stated in the retention bonus letter quote "Ryder appreciates your hard work and dedication and continue to need your expertise to assist us in a successful shutdown "

" it was contingent on being an active employee in good standing with no significant performance issues during the remainder of your employment " **( see exhibit No.47 )**
**"Retention letter)**

(128).Defendant Ryder cannot dispute, on April 6, 2023, Plaintiff emailed EEOC his rebuttal for charge 490-2023-01321, among others things claiming dates June 15,15 & July 15,24, asking about when the attendance policy became back active. About not being transferred to the Olive Branch facility. And about their wrongful garnishments without court order. **(Exhibit No. 42)**

(129).Defendant Ryder cannot dispute on April 7, and April 14.2023, Plaintiff emailed EEOC representative about the importance of recording claims of not being transferred. and garnishments, and attendance policy.. **(Exhibit No. 43)**

(130).Defendant Ryder cannot dispute On September 1.2022, Plaintiff emailed Human Resources Nguyen, and Bramblett telling them that the garnishment paper was not signed by a judge. that they need they consult their attorney ,because if not I will file legal documents.
**(Exhibit No.44)**

(131).Defendant Ryder cannot dispute on September 23.2022 Plaintiff email Carly Ball a human resource representative asking for the garnishment court order, my wages short. I am making the same as the lift drivers on 1st shift, and Ms. Nguyen not doing her job. **(Exhibit No.45)**

22

(132). Defendant Mid-West Warehouse, cannot dispute company did not upgrade Plaintiff pay to reflect 3rd shift pay, once moved the shift in July 2021.

(133). Defendant Midwest, cannot dispute that once Plaintiff was off work for covid in February 2021, Midwest did not take Plaintiff PTO.

(134). Defendant cannot dispute Quincy Allen worked third shift and younger employee, was transferred to the Olive Branch warehouse.

(135). Defendant Ryder cannot dispute, the serving of the garnishment affidavit , did not have a judges signature .( **Exhibit No.49** )

(136). Defendant Ryder cannot dispute, that Plaintiff had no previous garnishment being withheld in September of 2021.

(137). Defendant cannot dispute, Plaintiff asked those Ryder representatives', and Human Resources:  Nguyen, Ball included to let its attorney view the document.

(138).Defendant Midwest and Ryder had knowledge of the wage request affidavit on September 09, 2021 and never gave Plaintiff the notice. **(Exhibit No. 49, pg. 2 of 2)**

**(139).** Defendant Ryder or Midwest Human Resources Nina Nguyen, did not provide any document that the garnish income affidavit was sent to Plaintiff before he requested on April 21, 2022. **(Exhibit No. 49, pg. 1 of 2), (Exhibit No. 44, 45)**

**(140).**Defendant Ryder cannot dispute, once Plaintiff requested the court order no court order was produced, Plaintiff complained of retaliation. **(Exhibit No. 45)**

**(141).** Defendant Ryder cannot dispute Plaintiff EEOC charge No. 490-2022-01539 dated June 21,2022 , arrived after the April 21,2022 email.**( exhibit No. 49)**

(142). Defendant Ryder cannot dispute Plaintiff EEOC charge No. 490-2022-01539 dated June 21,2022 , arrived before the September 1.2022 email.**( exhibit No. 44)**

(143). Defendant Ryder cannot dispute Plaintiff EEOC charge No. 490-2022-01539 dated June 21,2022 , arrived after the September 9,2021 email.**( exhibit No. 49)**

(144). Defendant Ryder cannot dispute, Plaintiff sent an email dated September 1,2022 at12:29 after the April ,2022 email about denied promotion being retaliation. stating the garnish affidavit from Mike Bramblett was served in March 22, 2022 .**( exhibit No. 44)**

(145). Defendant Ryder cannot dispute that there are two different garnish affidavits (1). Nina Nguyen-served on Sept. 09, 2021 (2).Mr. Bramblett served on March 22, 2022.

(146). Defendant cannot dispute, email sent on September 30.2022, to Carly Ball, and management and supervisors, Plaintiff informed them that he have presented this issue to EEOC. **(Exhibit No. 50)**

(147). Defendant cannot dispute, email sent on September 22,2022. at 1:15 pm, to Carly Ball, and management and supervisors, calling this a grievance ,stating that 1st shift employees Michael Johnson and Cedric Brown .

(148). Defendants cannot dispute in its position statement saying "Mr. Johnson complained to Human Resources that he was denied the promotion in retaliation for either his (alleged) prior complaints about his compensation or because he had been "mentioned" in an EEOC Charge (that had not even been served on the Company at the time of his complaint.**( Exh.No. 40.,pg. 2)**

(149). Defendant cannot dispute the EEOC charge mentioned was received on April 27,2022 ,belonged to Ms. Weaver, caseNo.440-2021-07195, after Johnson complained about retaliation in promotions, against Midwest and Ryder , sent to ( Ryder) -Ms. Nguyen HR Generalist. **(Exhibit No. 52 and Exh. 53)**

(150). Defendants cannot dispute, that Carly Ball was, who was to help employees interested in positions within the company, transitioning from the Memphis TN warehouse to the Olive Branch warehouse , and not Mike Bramblett. **(Exhibit No. 51 )**

(151). Defendants cannot dispute, Mike Bramblett was handled the plant employees' transition

(152). Defendants cannot dispute, email dated February 1,2021, Johnson once having covid, was paid 80 hrs covid pay, and used no PTO. **(Exhibit No. 55 )**

(153). The defendant cannot dispute, in an email dated October 6,2022 , claiming he was only scheduled 37.5 hrs , but in retaliation payroll was taking 2.5 hours extra from un-requested PTO from Plaintiff. **(Exhibit No. 54)**

(154). The defendant cannot dispute, in an email dated September 14,2021, Plaintiff complained of being told not to come in to work, because there was no work, but that was not correct, others came in to work on the 3rd shift. **(Exhibit No.56)**

## PLAINIFF INJURY

The Plaintiff have suffered and will continue to suffer substantial injury as a result of Defendants'. In addition. Plaintiff suffers Emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life.

## CONCLUSION

25

It is well settled that the Defendants has committed all ,and every act mentioned in this complaint, in violations of Plaintiff rights.

## DAMAGES

(1)  Plaintiff seeks damages for blatantly and knowingly retaliating against Plaintiff in the amount of $1,000,000.00 for violations.  Plaintiff seeks, compensatory and Punitive damages pursuant in the amount of $1,000,000.00, for compensatory (2) punitive damages for future emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and the amount punitive damages.

## REQUEST FOR RELIEF

Wherefore, Plaintiff request and (wish) is that  to be  granted an order to make Plaintiff whole curing , and pay punitive damages as stated above, and for a jury trial,

## PLAINTIFF SWORN STATEMENT

Plaintiff Affirms that all the facts/allegations are true and correct pursuant to the penalty of perjury.

I, Francois Johnson the living soul certify that on this   day of Aug   2023.

Francois Johnson
6740 Pheasant Walk Cove
Memphis, Tn 38141
**Phone 1-901-628-2916**

**Francois,Johnson@ymail.com**

STATE OF _____ TN _____

COUNTY OF___ Shelby ____

26

SWORN AND SUBSCRIBED on this day $\underline{31^{st}}$ day of $\underline{Aug}$ , 2023

_____
Notary Public

27



# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Memphis District Office**
200 Jefferson Ave, Suite 1400
Memphis, TN 38103
(901) 685-4590
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 06/08/2023

**To:** Francois D. Johnson
6740 Pheasant Walk Cove
Memphis, TN 38141

Charge No: 490-2022-01539

EEOC Representative and email:  ANTUAN WILLIS-MARTIN
Federal Investigator
Antuan.Willis-Martin@eeoc.gov

## DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

## NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 490-2022-01539.

On behalf of the Commission,

Digitally Signed By: Edmond Sims
06/08/2023
Edmond Sims
Acting District Director

Please retain this notice for your records.

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | EEOC FEPA | 490-2022-01539 |

| Tennessee Human Rights Commission | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone | Year of Birth |
|---|---|---|
| Francois D. Johnson | (901) 628-2916 | 1970 |

**Street Address**

6740 Pheasant Walk Cove

Memphis, TN 38141

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| Midwest Distribution Warehouse    RECEIVED | 501+ Employees | |

| Street Address | |
|---|---|
| 5625 Challenge Drive    JUN 2 1 2022 | |
| Memphis, TN 38115    U.S. EEOC | |

| Name    Memphis District Office    Memphis, TN | No. Employees, Members | Phone No. |
|---|---|---|

Street Address

| DISCRIMINATION BASED ON | DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|---|
| | Earliest | Latest |
| Retaliation, Age | 07/01/2021 | 05/17/2022 |
| | Continuing Action | |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)).*

I was hired by the above-named employer as a Forklift Driver on November 4, 2019. Since July 2021, I have performed and operated as the Shift Lead on the weekend 6th shift on and off assisting Ms. Marquita Weaver, Supervisor. In July 2021, I became aware that my pay was lower than my younger coworkers. I sent multiple emails to the Facility Manager, Mike Bramblett; however, no response was given. I escalated my complaint to Human Resources; however, no response was given. In January 2022, I became aware of a Lead position opening for my shift. I expressed an interest in applying to my Supervisor, Antonio Hines, and Mike Bramblett. On March 23, 2022, I was interviewed for the position and told I was highly qualified as I had been filling the position during its vacancy. On April 14, 2022, I became aware that the position had been filled. I inquired as to why I was not selected. Mike Bramblett informed me that I was not selected due to attendance issues; however, I have received no disciplinary actions for attendance, nor have I had any issues with attendance. I believe I was retaliated against by not receiving the promotion due to my multiple complaints about my wages. I believe I have been discriminated against due to my age (52) and retaliated against in violation of the Age in Employment Discrimination Act of 1967, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| *[signature]* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |
| Date    6-20-22    *Charging Party Signature* | |

1 of 2

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION



**Memphis District Office**
200 Jefferson Ave, Suite 1400
Memphis, TN 38103
(901) 685-4590
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 06/08/2023

**To:** Francois D. Johnson
6740 Pheasant Walk Cove
Memphis, TN 38141

Charge No: 490-2022-01540

EEOC Representative and email:   ANTUAN WILLIS-MARTIN
Federal Investigator
Antuan.Willis-Martin@eeoc.gov

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 490-2022-01540.

On behalf of the Commission,

Digitally Signed By: Edmond Sims
06/08/2023
_____
Edmond Sims
Acting District Director

Please retain this notice for your records.

Exh #2    2 of 2

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ EEOC<br>☐ FEPA | 490-2022-01540 |

| Tennessee Human Rights Commission | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone | Year of Birth |
|---|---|---|
| Francois D. Johnson | (901) 628-2916 | 1970 |

Street Address

6740 Pheasant Walk Cove

Memphis, TN 38141

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| Ryder Systems Inc | 501+ Employees | |

Street Address

5625 Challenge Drive

Memphis, TN 38115

RECEIVED

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

JUN 2 1 2022

Street Address

U.S. EEOC
Memphis District Office
Memphis, TN

| DISCRIMINATION BASED ON | DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|---|
| | Earliest | Latest |
| Retaliation, Age | 07/01/2021 | 05/17/2022 |
| | Continuing Action | |

THE PARTICULARS ARE (*If additional paper is needed, attach extra sheet(s)*):

I was hired by the above-named employer as a Forklift Driver on November 4, 2019. Since July 2021, I have performed and operated as the Shift Lead on the weekend 6th shift on and off assisting Ms. Marquita Weaver, Supervisor. In July 2021, I became aware that my pay was lower than my younger coworkers. I sent multiple emails to the Facility Manager, Mike Bramblett; however, no response was given. I escalated my complaint to Human Resources; however, no response was given. In January 2022, I became aware of a Lead position opening for my shift. I expressed an interest in applying to my Supervisor, Antonio Hines, and Mike Bramblett. On March 23, 2022, I was interviewed for the position and told I was highly qualified as I had been filling the position during its vacancy. On April 14, 2022, I became aware that the position had been filled. I inquired as to why I was not selected. Mike Bramblett informed me that I was not selected due to attendance issues; however, I have received no disciplinary actions for attendance, nor have I had any issues with attendance. I believe I was retaliated against by not receiving the promotion due to my multiple complaints about my wages. I believe I have been discriminated against due to my age (52) and retaliated against in violation of the Age in Employment Discrimination Act of 1967, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| *[signature]*<br>Date 6-20-22    Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |



# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Memphis District Office**
200 Jefferson Ave, Suite 1400
Memphis, TN 38103
(901) 685-4590
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 06/08/2023

**To:** Mr. Francois Johnson Sr.
6740 Pheasant Walk Cove
Memphis, TN 38141

Charge No: 490-2023-01321

EEOC Representative and email:    ANTUAN WILLIS-MARTIN
Federal Investigator
Antuan.Willis-Martin@eeoc.gov

## DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

## NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 490-2023-01321.

On behalf of the Commission,

Digitally Signed By: Edmond Sims
06/08/2023

Edmond Sims
Acting District Director

Please retain this notice for your records.

Exh #3

2 of 3

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | EEOC<br>FEPA | 490-2023-01321 |

| Tennessee Human Rights Commission | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(indicate Mr., Ms., Mrs., Miss, Mx., Dr. Hon., Rev.)*<br>Francois Johnson | Home Phone<br>(901) 628-2916 | Year of Birth<br>1970 |
|---|---|---|

Street Address
6740 Pheasant Walk Cove
Memphis, TN 38141

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name<br>Ryder Systems Inc | No. Employees, Members<br>501+ Employees | Phone No. |
|---|---|---|

Street Address
5625 Challenge Drive
Memphis. TN 38115

| Name | No. Employees, Members | Phone No. |
|---|---|---|

Street Address                                    City, State and ZIP Code

| DISCRIMINATION BASED ON | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| Age, Retaliation | Earliest: 06/21/2022    Latest: 11/01/2022 |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I began my employment with the above-named company on November 4, 2019, as a Forklift Driver.

On June 21, 2022, I filed a charge of discrimination with the EEOC (490-2022-01540).

On October 27, 2022, I received a Separation Notice that indicated I was being discharged due to a Reduction in Force. In addition, I was denied a severance package. The last day I worked, was on October 28, 2022.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| Date: Feb. 15, 2023    Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

Page 1 of 3

EXH #
3

3 of 3

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | EEOC  FEPA | 490-2023-01321 |

| Tennessee Human Rights Commission | and EEOC |
|---|---|
| *State or local Agency, if any* | |

On November 1, 2022, I learned younger employees affected by the Reduction in Force, were allowed to transfer to other facilities but I was denied.

I believe I was discriminated against because of my age (52) and in retaliation for filing a previous in violation of the Age Discrimination in Employment Act of 1967, as amended.



EQUAL EMPLOYMENT OPPORTUNITY COMM.
RECEIVED
FEB 15 2023
MEMPHIS, TENN.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.  SIGNATURE OF COMPLAINANT |
| *Date*  Feb. 15, 2023    *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE  *(month, day, year)* |

Page 2 of 3



10/14/2022

Francois Johnson
6740 Pheasant Walk Cove
Memphis, TN 38141

Re: Notice of Termination

Dear Francois,

For the reasons discussed during our meeting today, we regret to inform you that your employment with Ryder Logistics, will be terminated due to a reduction in work force effective October 28th, 2022. Please be assured that this was a very difficult decision for Ryder to have to make but one that was necessary in light of current business conditions.

Upon termination all positive PTO time will be paid out upon last check. You will be receiving information regarding the opportunity to continue coverage for you and your covered dependents under COBRA upon your last day. That information summarized the COBRA enrollment process and timelines, as well as where to get pricing information. Under the federal COBRA rules, you are responsible for all premiums for continued health coverage.

Sincerely,

Mike Bramblett





## Midwest Warehouse / Ryder Employee Q&A

**People**

**What does this purchase mean for Midwest Warehouse employees?**

Ryder has acquired the parent company of Midwest Warehouse, which means that Ryder has assumed all of the employees, customers and operations of Midwest Warehouse.

**Who is Ryder?**

Ryder System, Inc. (NYSE: R) is a leading FORTUNE 500® logistics and transportation company. It provides supply chain, dedicated transportation, and fleet management solutions, including full-service leasing, rental, and maintenance, used vehicle sales, professional drivers, transportation services, freight brokerage, warehousing and distribution, e-commerce fulfillment, and last mile delivery services, to some world's most recognized brands.

Ryder's more than 40,000 employees provide services throughout the United States, Mexico, Canada, and the United Kingdom. In addition, Ryder manages nearly 235,000 commercial vehicles and operates more than 300 warehouses encompassing approximately 64 million square feet. Ryder works behind the scenes to ensure the brands that consumers know and trust will be there when they need them.

Ryder is regularly recognized for its industry-leading practices in third-party logistics, technology-driven innovations, commercial vehicle maintenance, environmentally friendly solutions, corporate social responsibility, world-class safety and security programs, military veteran recruitment initiatives, and hiring of a diverse workforce.

**What is my employment status with Ryder? Am I being hired? Will I be required to submit an application? Will I be interviewed, etc.?**

Your Midwest Warehouse employment status will remain the same under Ryder's ownership and you will not be required to complete an application, be interviewed, or be subject to any other pre-employment screenings if you are currently a full-time Midwest Warehouse employee. For the purposes of paid time off (PTO), benefits and your eligibility and vesting time as it pertains to your 401(K) plan, your service with Midwest would be recognized.

If you are a temporary employee working at the Midwest Warehouse, your employment will continue with your current agency. If you would like to apply to any open positions that have permanent payroll status as a Ryder employee, you would be required to complete Ryder's pre-employment screenings/application process.

Exh #5

2 of 2

**Will there be any changes to the payroll process?**

The Midwest Warehouse timekeeping and payroll systems will remain in place until the transition to Ryder's systems, which will take place on January 1, 2023.

**Will I be required to fill out new W4 and Direct Deposit Forms?**

No, your current exemptions and delivery of your pay will continue as is.

**Benefits**

**Will my health and welfare benefits remain the same?**

The Midwest Warehouse benefit plans will remain in place throughout the 2021 and 2022 benefit years. Beginning January 1, 2023, Midwest Warehouse employees will transition to Ryder's benefit plans. More information regarding benefits will be provided at a later date.

**Will the cost of my benefits change?**

There will be no change to the cost of your benefit premiums in calendar year 2021. Your 2022 employee costs will be communicated to you at enrollment time. For 2023, employee costs will depend on the plan design you choose. Ryder offers several different benefit plans and coverage options. Employee deductions will be determined based on your elections.

**Will my 401(k) Plan change?**

There will be no change to your 401(k) plan in 2021 or 2022. Beginning January 1, 2023, Midwest employees will begin participating in the Ryder 401(k) Plan.

**Will my vacation time remain the same?**

Your vacation time will remain the same for 2021 and 2022. Employees will be converted to Ryder's Paid Time Off (PTO) schedule on January 1, 2023.

**Will my holiday schedule remain the same?**

Your holiday schedule will remain the same for 2021 and 2022. Ryder's holiday schedule will apply beginning on January 1, 2023.

**Whom do I contact if I have questions?**

The transition management team is committed to answering questions in a thorough and timely manner. Employees will receive periodic updates throughout this transition period. We encourage employees to direct any questions they have to their immediate supervisor or via email to Midwestemployees@ryder.com.

3

Case 2:23-cv-02554-SHL-atc Document 1 Filed 08/31/23 Page 38 of 112 PageID 38

But I wasn't. Because im still employed by Ryder.

Sent from Yahoo Mail on Android

On Tue, Nov 1, 2022 at 3:07 PM, Carly L. Ball
<Carly_L_Ball@ryder.com> wrote:

> Hi Francois,
>
> Thank you for your email. For your termination paperwork you will receive you letter within the mail to your
> personal address. Unfortunately, your position was not eligible for severance package based on Ryder's
> Severance plan.
>
> Olive Branch facility transferred needed to be in good standing with attendance and performance with
> company. Based on your performance and attendance you were not eligible for transfer to olive branch.
>
> Please advise what information you needed from Nina and I will be sure to look into it for you.
>
> Thank you
>
> **Carly L. Ball**
> Human Resources
> Manager Human Resources Partner
> P: (630) 739-6760 x 4001
>
> Carly_L_Ball@ryder.com
> www.Ryder.com



SUPPLY CHAIN | DEDICATED TRANSPORTATION | FLEET MANAGEMENT SOLUTIONS

**From:** Francois Johnson <francois.johnson@ymail.com>
**Sent:** Tuesday, November 1, 2022 11:33 AM
**To:** Carly L. Ball <Carly_L_Ball@ryder.com>; Mike Bramblett [C] <Mike_Bramblett@ryder.com>; Parker
Anderson [C] <Parker_Anderson@ryder.com>
**Subject:** My separation letter sent yesterday morning

**RYDER CAUTION:** This email originated from outside of the organization and may have malicious
content. Be cautious when clicking on links or opening attachments.

Carly, i sent you an email stating that Mike Bramblett did not send the Ryder Olive branch my information to be
transferred to that facility. But as of today, everyone thst was affected by the force reduction for November are at that
facility, but not me and I personally talked to the supervisor on that shift, that wanted me to come before the end of
October. Mike did not send my information because I have several active complaints filed with EEOC. YET RYDER
SYSTEM knowing his a my issues allowes and allowed him to deal with my transfer. This is retaliation for Ryder failure
to protect me from constant retaliation and discrimination based on EEOC complaints. Secondly ,I have not received
a separation letter from Ryder ,I have documents from Ryder stating i am a Ryder employee, this is also something
that Ryder has not denied in their Eeoc Response to my complaint. The Federal Laws protect me from retaliation. Ryder
is not following their retaliation policy I signed off on on November 9, 2021. I have downloaded every policy from my
ADP, and Carly you as Chief human resources agent has constantly practiced " acquiescence " with has constantly failed
to protect my employment. I sent you a email asking how can a supervisor take my job as a forklift driver to avoid the

Case 2:23-cv-02554-SHL-atc Document 1 Filed 08/31/23 Page 39 of 112 Exh #6
PageID 39

2 of

force reduction, discriminating against me in my class. This to will also be emailed to the Eeoc representative as all of my corroborating documents. Because Ryder facilitate Brambletts discriminating action. You claiming to have nondiscrimination policies, but clearly its on a case by case basis. Thirdly since I am still a Ryder employee, I need a counselor to talk to. Nina didn't get me the information when I asked for it. And i was not even offered servance as the other employees that was not transferred, the (3) three weeks of pay, which is also discrimination on terms of employment.

I will be waiting on your response.

Sent from Yahoo Mail on Android

The information contained in this electronic communication and any accompanying document is confidential, may be
attorney-client privileged, and is intended only for the use of the addressee. It is the property of Ryder System, Inc. Unauthorized use, disclosure or copying of this communication, or any part of it, is strictly prohibited and may be unlawful. If you have received this communication in error, please notify the sender immediately by return
email, and destroy this communication and all copies of it, including all attachments. Electronic communication may be susceptible to data corruption, interception and unauthorized tampering and Ryder disclaims all liability of any kind for such actions or any consequences that may arise directly or indirectly therefrom.

7

## My pay

From:   Francois Johnson (francois.johnson@ymail.com)

To:     mikebramblett@midwestwarehouse.com

Date:   Thursday, December 30, 2021 at 07:24 AM CST

Mike you gave me my shift differential,  but no raise like my co workers on the third shift.  How do i know this, is because temps coming in on the shift makes the same as i do and thst is not right, being i been employed since july 2019. You told me u was gonna take care of me for working in the osd department,  but i do not see a difference,  from me doing what a person fresh off the street does. And i believe u think its fair for a going on 3 year worker, to make the same as a new hire. Will you revisit your decision, and if not tell me how can this be fair, especially  sincei got a raise 2 years in a row, and the new hire makes more than me in some instances. I really expect a answer coming off the new year weekend. Or i will take it as acquiesce.

Sent from Yahoo Mail on Android

Case 2:23-cv-02554-SHL-atc    Document 1    Filed 08/31/23    Page 41 of 112
PageID 41

## I did not get A raise as the other hourly employee s

From:   Francois Johnson (francois.johnson@ymail.com)

To:     ninanguyen@midwestwarehouse.com; mikebramblett@midwestwarehouse.com

Date:   Wednesday, February 9, 2022 at 10:21 AM CST

Mike you gave me my shift differential,  but no raise like my co workers on the third shift.  How do i know this, is because temps coming in on the shift makes the same as i do and thst is not right, being i been employed since july 2019. You told me u was gonna take care of me for working in the osd department,  but i do not see a difference,  from me doing what a person fresh off the street does. And i believe u think its fair for a going on 3 year worker, to make the same as a new hire. Will you revisit your decision, and if not tell me how can this be fair, especially  sincei got a raise 2 years in a row, and the new hire makes more than me in some instances. I really expect a answer coming off the new year weekend. Or i will take it as acquiesce.

Sent from Yahoo Mail on Android

Exh, #
9

## RE: My separation letter sent yesterday morning

From    Francois Johnson (francois.johnson@ymail.com)

To.     Carly_L_Ball@ryder.com; mike_bramblett@ryder.com; parker_anderson@ryder.com; francois.johnson@ymail.com

Date    Wednesday, November 2, 2022 at 09:00 AM CDT


Carly, i will need to see Ryder's servance plan for myself to verify what you are saying.

Next, Carly i did not get written up for attendance issue until I reported Mike Bramblett for denying me 3rd shift lead position. And I was following the notice posted by the time clock, that wasnt removed until June 10, 2022.

## Denied job promotion- 3rd shift lead

From:  Francois Johnson (francois.johnson@ymail.com)

To:  Nina_Nguyen@ryder.com; francois.johnson@ymail.com; marquitaweaver529@gmail.com;
Britt_Jermigan@ryder.com; Tony_Hines@ryder.com; Mike_Bramblett@ryder.com; Parker_Anderson@ryder.com

Date:  Thursday, April 14, 2022 at 01:12 PM CDT

For about (7 ) months or so I have been in contact with Mike Bramblett , Nina Nguyen , and most recently with Britt Jermigan about my shift differential pay and regular hourly work pay increase. Also since that time or a few months before . I was mentioned in a pending EEOC complaint still pending . Last month near the end of March is interviewed for the 3rd shift lead position.  On today April 14,2022 I was denied a job promotion that I was Qualified for, and was a skill set that I handled at the company when a Supervisor (s) could not show up, for no fault of their own. And a postion that I held down on the 6th shift all by myself, because Mike and other managers did not staff, so I would work the shift picking the orders, staging the orders, putting away stock, loading and unloading the inbound and outbound trucks just 1 man ( ME ) . Now this morning  Mike Bramblett approached me with his decision. stating they chose  not to promote me to the position of 3rd shift lead.  I asked mike why was I not chosen for the position his response was we chose to pick a outside  Ryder person, who is not familiar with this facility, which I found to be very discriminatory in nature because of how Mike and the midwest have picked the leads on 1st shift, which these open position were never communicated by a notice being posted , that a lead position was available, just as this position was not posted where fulltime employees could apply. Up until at least (3) months ago , the company did not have the EEOC policy posted, or a contact person to secretly report job discrimination. Since Mike Bramblett first arrived he called a meeting ant told everyone that if we had a problem ,even with him   , that  we might as well come to him and tell him, because it was going to come back to him anyways. So the last (2) shift lead positions were not posted where for employees to apply, but I kept up with this position , because it was a opening on my shift, and I am the most  senior. It is my belief that Mike and the decision makers have retaliated against me by association of a pending EEOC complaint and was denied promotion, and the job filled by a outside person, but in both instances of the first and second shift leads, those position while not posted, were filled with the members on those perspective shifts, but because I was the only person to apply on my 3rd shift , and I have complained to management and human resources to no avail, or answer Mike Bramblett and company discriminatorily and out of retaliation chose a outside person for a shift and a position that i performs weekly on the weekend. absent a paid shift leave. Not withstanding the facts mentioned , I also have worked in the inventory dept. were twice Mike Bramblett placed me to correct over a month of damaged and outdated inventory that piled up ALL OVER the perimeter of the warehouse , while I was out recovering from covid / pneumonia, he thanked me , but then screwed over me again, claiming he is a transparent Christian, acting as a Sheep in wolf clothing. Paying brand new temporary employees 17 dollars an  hour at that same time paying me $14.50, and other more or less depending on his ego.  Always talking about lets get her done meaning  Scratch his back and he was gone scratch yours " BUT HIS BACK HADS ALL THE SCRATCHES , Like a modern day slave master. His actions remind me of the Willie Lynch techniques. This is very disturbing for me to have a job I am well qualified to do snatched because of discriminatory action and our local human resources is a joke , she still have not answered my emails, she just started reporting to work , cant take care of the needs of the employees , because she is running up behind Mike or away from mike. And I will be seeking a health care specialist to help me direct this undue stress of being retaliated and discriminated against . My Question is does Midwest/Rider provide any type of assistance when a employee is harmed by the company. This is not fair, for a company that claims to be an equal employment opportunity .

11    1 of 2

## Nina Nguyen [C]

| | |
|---|---|
| **From:** | Janice Brandner [C] |
| **Sent:** | Monday, June 6, 2022 2:01 PM |
| **To:** | Nina Nguyen [C] |
| **Cc:** | Jeff Stonick; Tim A. Nelson [C] |
| **Subject:** | Applying PTO to timecards |

Nina,

While the handbook is designed to cover the basics, it is not able to cover all possible situations and so while it is not in our handbook, it is our policy to apply PTO when a full time associate works less than 36 hrs, then we will apply PTO to get them up to a full week's pay.
By doing this, it assists them so that they don't build up a large PTO balance that may not be able to be taken before year-end due to scheduling.

*Please note that my email has changed to* Janice_Brandner@Ryder.com

**Ryder Systems**
**Janice Brandner**
Human Resources Coordinator II
(630) 739-6760  Ext 1008



SUPPLY CHAIN  |  DEDICATED TRANSPORTATION  |  FLEET MANAGEMENT SOLUTIONS

**From:** Nina Nguyen [C] <Nina_Nguyen@ryder.com>
**Sent:** Monday, June 6, 2022 1:22 PM
**To:** Janice Brandner [C] <Janice_Brandner@ryder.com>
**Cc:** Jeff Stonick <Jeff_Stonick@ryder.com>
**Subject:** FW: meeting on alleged PTO request, and instructions on viewing time punches in mobile ADP

Hi Janice,

Is there anywhere in the handbook stating that we will automatically use the employee's available PTO hours if they miss work or are missing hours?  I didn't see anything, but I could have missed it.

Thank you.

**Nina Nguyen**
Human Resources Specialist

**From:** Britt Jernigan [C] <Britt_Jernigan@ryder.com>
**Sent:** Saturday, June 4, 2022 9:32 AM
**To:** Francois Johnson <francois.johnson@ymail.com>; Mike Bramblett [C] <Mike_Bramblett@ryder.com>; Nina Nguyen

[C] <Nina_Nguyen@ryder.com>; Tony Hines [C] <Tony_Hines@ryder.com>; Marquita Weaver [C]
< Marquita_Weaver@ryder.com>

**Subject:** Re: meeting on alleged PTO request, and instructions on viewing time punches in mobile ADP

Mr. Johnson,

As we discussed the other day if you want to see your punches, please see your supervisor. On your PTO, it is Midwest policy that if you are absent and have PTO for it to be used.

The lights that are out was reported to Johnson equipment.  Daryl and I went through each door.

I will set up a meeting next week to discuss further if you would like.

Thank you for all you do

Britt Jernigan

**Get** Outlook for iOS

**From:** Francois Johnson <francois.johnson@ymail.com>
**Sent:** Friday, June 3, 2022 7:47:56 PM
**To:** Britt Jernigan [C] <Britt_Jernigan@ryder.com>; Mike Bramblett [C] <Mike_Bramblett@ryder.com>; Nina Nguyen [C]
< na_Nguyen@ryder.com>; Tony Hines [C] <Tony_Hines@ryder.com>; Marquita Weaver [C]
< Marquita_Weaver@ryder.com>; Francois Johnson <francois.johnson@ymail.com>
**Subject:** meeting on alleged PTO request, and instructions on viewing time punches in mobile ADP

RYDER CAUTION: This email originated from outside of the organization and may have malicious content.  Be cautious when clicking on links or opening attachments.

Nina I am just touching bases with you on when can I expect instructions on how I may gain access in the mobile ADP app. to view my daily punches, as of today I have not received any communications from you HR as it relates to  my request  to be instructed how to gain such knowledge.


Secondly, I requested a meeting to see any records to date  of my requesting PTO by way of ADP, or any written request form I have signed . I  am requesting a appointment  time and date, ( acquiescence )  = that is saying nothing and doing nothing , is not an option  Please and Thank you. I am looking forward to putting this to rest.

Hopefully this can be arranged  in house and not have to be taking to the out of state HR office to get and keep transparency and integrity " of a process " at the forefront  of operations and policies .

P.S. We have dock door lights and locks not in operation, we don't need any more Q situations.

As you know Ryder has a captain of the ship policy, Process, Process, Process !

Sincerely ,
Mr. Francois Johnson Sr

2

*[handwritten: To include with Conduct Discussion Exh # 12]*

## Nina Nguyen [C]

| | |
|---|---|
| From: | Francois Johnson <francois.johnson@ymail.cor |
| Sent: | Friday, May 27, 2022 3:21 PM |
| To: | Nina Nguyen [C] |
| Cc: | Britt Jernigan [C]; Mike Bramblett [C] |
| Subject: | RE: Attendance, written warning |
| | |
| Categories: | TO COMPLETE, EMPLOYEE RELATIONS |

: This email originated from outside of the organization and may when clicking on links or opening attachments.

Again, im asking for the same document that britt gave me, but with out the marks. So i can compare apples to apples, your copy is missing headings of all or some of the columns. You stated YOU HAD TO CUT AND PASTE yours, but BRITT DID A BETTER AND PROFESSIONAL JOB, just too small and obstructed to decifer. NOW YOU TELLING me that YOU CANNOT WALK OVER 3 FEET or email Mr. britt to send you his organized , exact copy of the form HE prepared which is a better cut and paste, yours is just like your first impression to the employees, we 99% black and get no real respect as usual from a couple of folks in my opinion. Ms. Nina EVERYONE has some type of short comings, and should not be afraid or too prideful to ask for help. I'm a black man in post and pre discriminated country, that my people built, and I ask for help when needed as you will see. I am pretty sure Mr. Jernigan could accommodate this , if you only ask. Next, yall around there taking employees PTO , even forging and faking that ( I ) requested PTO hours, making me have 40 hrs, when Im only scheduled 7.5 , and this is something yall should know, and to me this makes yall falsifiers of electronic requesting documents. Now i would like to see the all proof that I requested PTO electronically this year. Because the same thing happened to me last year under your tenor . So, I want to schedule a meeting with you and the folks mentioned to address ALL THOSE electronic REQUESTS THAT I allegedly REQUESTED up to this present date. Yall just be taking employees liberties in your own hands. Will wait on your emailed date when we can discuss my request , because when I caught COVID , I was asked by HR did I want to use my PTO ,and my answer was NO and none was taken, and Mike Bramblett was over the facility in 2021. I need to know why now . Lets talk about my PTO request. So until you get those DUCKS IN A ROW, can you please send me the process in ADP , where I can view my timesheet punches, PLEASE AND THANK YOU. I was not aware I could do that, or that any non-administrative employee has access to view the electronic time cards , mainly because (nowhere )on my adp menu app is this function. And again I am requesting a meeting with you (Nina ), Britt, Mike , Tony and myself to discuss my alleged request for PTO . " I "RECALL in July of 2021 I requested PTO, Mike Bramblett a non supervisor to me, made a decision to deny my request while I was under Keith Holland's leadership. So I am grossly confused. And feel attacked, and backed into a corner of upmost confusion, and this meeting is warranted. Again my time as your time is precious, and any last minute announced meeting will not be productive , I have outside obligations after my shift. Even yourself, you request that ( I ) set up an appointment, clearly no exceptions, I agree wholeheartedly, if thats a word. Now I believe z college grade person can multitask pretty well, Im just a 12th grade graduate within a open mind all these request can achieved in this order.

And yes I am very distraught because of your lack of professionalism and your presentation in these matters.


Very truly Sincerly,
Mr. Francois D. Johnson Sr.



[illegible]

On, May 27, 2022 at 1:49 PM, Nina Nguyen [C]
Nina.Nguyen@ryder.com> wrote:


Francois,

1

Case 2:23-cv-02554-SHL-atc    Document 1    Filed 08/31/23    Page 47 of 112
PageID 47

13

# The scanner and the wire attached

From: Francois Johnson (francois.johnson@ymail.com)

To: britt_jernigan@ryder.com; mike_bramblett@ryder.com; tony_hines@ryder.com; marquita_weaver@ryder.com; nina_nguyen@ryder.com

Date. Monday, May 23, 2022 at 12:40 AM CDT



The past 2 days , the thin wires on the scanner has been puncturing my left hand and right hand and now to night my left hand and elbow and arm is feeling irritated, and is throbbing, up to my shoulder blade. Tommorow i plan to go to the doctor and see what is going on. Because not only am I throbbing, I also just realized that its not sanitary, .no telling who has what ,and this has mentally disturbed me. There should have been a thought out test, as you can see i applied blue tape on the device. And have discontinued use of this scanner. I will finish this night but tommorow, im going to the doctor to get it checked out.

Sent from Yahoo Mail on Android

EX #
14

RE: Attendance, written warning

Nina Nguyen [C] <Nina_Nguyen@ryder.com>

Thu 5/26/2022 10:07 AM

To: Francois Johnson <francois.johnson@ymail.com>;Britt Jernigan [C] <Britt_Jernigan@ryder.com>;Tony Hines [C] <Tony_Hines@ryder.com>;Marquita Weaver [C] <Marquita_Weaver@ryder.com>

I'll get this to you as soon as I can

**Nina Nguyen**
Human Resources Specialist

From: Francois Johnson <francois.johnson@ymail.com>
Sent: Thursday, May 26, 2022 7:31 AM
To: Francois Johnson <francois.johnson@ymail.com>; Britt Jernigan [C] <Britt_Jernigan@ryder.com>; Tony Hines [C] <Tony_Hines@ryder.com>; Nina Nguyen [C] <Nina_Nguyen@ryder.com>; Marquita Weaver [C] <Marquita_Weaver@ryder.com>
Subject: Re: Attendance, written warning

**RYDER CAUTION:** This email originated from outside of the organization and may have malicious content. Be cautious when clicking on links or opening attachments.

Good morning, what I need is a blown up copy of my punches, time, date. THat is my problem. I am dealing with a person in Ryder Human Relations department and because the verbal warning has lines drawn through dates and time. I cannot explain my arguments with and to the Human relations guy. If you would email me a ledgeable copy. Then I can be better prepared to defend my actions

Sent from Yahoo Mail on Android

On Wed, May 25, 2022 at 8:12 AM, Francois Johnson <francois.johnson@ymail.com> wrote:

> Nina, I would like to have a meeting with me, [?] I for you to go on these my punches, I need dates, because at this point I am having a hard time understanding some of these punches, and all the punches associated with this attendance policy and this disciplinary action, that has now taken place conveniently after my disclosure of being denied shift differential and denied promotion to the 2rd shift lead position, and I believe it is connected to my on the job injury, that I reported on May 23, 2022 about some exposed wires attached to a hand scanner which is an essential work device, which punctured my left hand, which resulted in me receiving a tetanus vaccine shot at the company expense, but it caused me shocks of pain from my, hand up to my shoulder and neck. It is my wish that a time and date be communicated by way of this email feed, so that all will be on the same page, and what to be discussed. But if you dont feel the need to meet we communicate that too.
>
> Please and thank you.
>
> Sent from Yahoo Mail on Android

**Midwest
Warehouse**
*& DISTRIBUTION SYSTEM*

# VERBAL WARNING

| Employee | Location |
|---|---|
| Francois Johnson | Memphis, TN |
| Incident Date | Supervisor |
| 01/01/22 through 04/21/22 | Tony Hines |

### Nature of Infraction

| | | |
|---|---|---|
| ☐ violation of work rules | X *excessive absenteeism* | ☐ insubordination |
| ☐ violation of company policy | X *excessive tardiness* | ☐ substandard work |
| ☐ violation of safety rules | ☒ excessive early departure | ☐ other |
| ☐ other rule violation | ☐ other attendance issue | |

### Description of Infraction

Francois Johnson has accumulated 33.5 attendance violation points during the period January 01 through April 21, 2022. The Midwest attendance policy requires a verbal warning be issued. He is to permanently improve his attendance.

Further attendance violations may result in additional disciplinary action up to and including termination.

Comments:

The employees of Midwest Warehouse are our most valuable resources. The company's business success depends heavily upon the function that each employee performs. Attendance, punctuality, and dependability are very important values to the success of our employees. It is the responsibility of our employees to practice good attendance habits, come to work on time, and following the schedule as outlined by their supervisor / manager. Reliable attendance minimizes any negative impact that absenteeism has on our customers, co-workers and the company.

You have been provided with an additional copy of our attendance policy.

| Employee's Signature: *refused to sign* | Date: 6/8/22 |
|---|---|
| Supervisor's signature: *T. Hines* | Date: 6/8/22 |
| HR Signature: *Brett Jernigan* | Date: 6/8/22 |

2-2018

**Midwest**

**Warehouse**

*& DISTRIBUTION SYSTEM*

16

## WRITTEN COUNSELING

| Name of Employee: | Name of Location: |
|---|---|
| **Francois Johnson**      Employeee ID: EGV235905 | **28-Memphis, TN** |
| Incident Date(s): | Name of Supervisor / Manager: |
| **May 25, 26, 27 & June 3.** | **Tony Hines** |

**Nature of Infraction:**

| | | |
|---|---|---|
| ☐ violation of work rules | ☐ excessive absenteeism | ☐ insubordination |
| ☐ violation of company policy | ☐ excessive tardiness | ☐ substandard work |
| ☐ violation of safety rules | ☐ excessive early departure | ☒ Other |
| ☐ other rule violation | ☐ other attendance issue | |

**Description of Infraction:**

Francois Johnson, today you are being counseled because on the above identified incident date, you sent written correspondence to members of the management team, specifically the Human Resource Generalist Nina Nguyen.

The correspondence identified in the incident dates are attached for your reference as well the reference of the counseling

Francois, it is important to understand that the perception of harassment is a form of harassment and could be subject to a formal investigation.

This company has in place a Harassment Policy as well as an Office Etiquette Policy. Your correspondence could be perceived as a violation of the two above mentioned Policies.

Harassment in any form is not acceptable in the workplace, and this counselling services as notification to you as such and is intended to inform you of the two above mentioned policies.

As a result of your above identified communication specific to the Human Resources Generalist at this facility, any future communication or Human Resource employment associated needs will need to be initiated thru your immediate Supervisor, and if your supervisor can not resolve the issue an appointment with Human Resource Generalist at this facility will need to be scheduled.

**Comments:**

| | |
|---|---|
| Employee's Signature: *refused to sign* | Date: 6/8/22 |
| Supervisor's signature: *T. Hines* | Date: 6/8/22 |
| *Britt Jernigan* | 6/8/22 |

2-2018

# I did not get A raise as the other hourly employee s

From:  Francois Johnson (francois.johnson@ymail.com)

To:  ninanguyen@midwestwarehouse.com; mikebramblett@midwestwarehouse.com

Date:  Wednesday, February 9, 2022 at 10:21 AM CST

Mike you gave me my shift differential,  but no raise like my co workers on the third shift.  How do i know this, is because temps coming in on the shift makes the same as i do and thst is not right, being i been employed since july 2019. You told me u was gonna take care of me for working in the osd department,  but i do not see a difference,  from me doing what a person fresh off the street does. And i believe u think its fair for a going on 3 year worker, to make the same as a new hire. Will you revisit your decision, and if not tell me how can this be fair, especially  sincei got a raise 2 years in a row, and the new hire makes more than me in some instances. I really expect a answer coming off the new year weekend. Or i will take it as acquiesce.

Sent from Yahoo Mail on Android

Exh # 18

Investigation of " written counseling "

Francois Johnson <francois.johnson@ymail.com>
Tue 6/28/2022 1:33 PM

To: Britt Jernigan [C] <Britt_Jernigan@ryder.com>;Mike Bramblett [C] <Mike_Bramblett@ryder.com>;Nina Nguyen [C] <Nina_Nguyen@ryder.com>;Tony Hines [C] <Tony_Hines@ryder.com>;Francois Johnson <francois.johnson@ymail.com>

**RYDER CAUTION**: This email originated from outside of the organization and may have malicious content. Be cautious when clicking on links or opening attachments.

Mr. Britt , in reference to the written counseling . Since it is the company both Ryder and Midwest policy as you indicated and both expressed and implied to not give me the accused harasser the name of the accuser (s) The company(s) and its representative are damaging my character by defaming my name and character. Since I cannot be an investigation into matter. I request that you remove that shame couseling warning, because it appears no one was harmed within the company as alleged, but only me. And I am very disturbed, because my employment hangs in the balance

Sent from Yahoo Mail on Android

EX 19



May 20, 2022

Francois Johnson
francois.johnson@ymail.com

Dear Mr. Johnson

Thank you for bringing your concerns forward.

The investigation of this matter has been completed. Ryder investigated all your allegations and any areas requiring remediation were addressed accordingly. Due to the confidential nature of any investigation, findings must remain private and cannot be shared.

Ryder strictly prohibits retaliation for filing a report in good faith. If you believe you have been affected by an act of retaliation, please report it to us immediately.

Sincerely,

Adam James

Adam James
Employee Relations Lead


Exh #
20

## Attendance, written warning

Francois Johnson <francois.johnson@ymail.com>

Wed 5/25/2022 8:12 AM

To: Britt Jernigan [C] <Britt_Jernigan@ryder.com>;Tony Hines [C] <Tony_Hines@ryder.com>;Nina Nguyen [C] <Nina_Nguyen@ryder.com>;Marquita Weaver [C] <Marquita_Weaver@ryder.com>;Francois Johnson <francois.johnson@ymail.com>

**RYDER CAUTION**: This email originated from outside of the organization and may have malicious content. Be cautious when clicking on links or opening attachments.

Nina , i would like to have a meeting with the ( 3) of you to address my punches. I need clarity because at this point I am having a hard time understanding , some of  dated punches, and all the policies associated with this attendace policy and this  disciplinary action, that has now taken place conveniently after my displeasure of being denied shift differential and denied promotion to the 3rd shift lead position, and I believe it is connected to my on the job injury, that i reported on May 23, 2022 about some exposed wires attached to a  hand scanner which is an essential work device ,which punched my left hand , which resulted in me receiving a tetanus vaccine shot at the company expense, but it caused me shocks of pain from my, hand up to my shoulder and neck. It is my wish that a time and date be communicated by way of  this email feed, so that all will be on the same page, and what to be discussed  But if you dont feel the need to meet well communicate that too.

Please and thank you .

**Sent from Yahoo Mail on Android**

Ok thanks

Sent from Yahoo Mail on Android

On Mon, May 23, 2022 at 10:27 AM, Nina Nguyen [C]
<Nina_Nguyen@ryder.com> wrote:

> Francois,
>
> I called the number, but the line is busy. I'll keep trying.
>
> ---
>
> **From:** Francois Johnson <francois.johnson@ymail.com>
> **Sent:** Monday, May 23, 2022 9:33 AM
> **To:** Britt Jernigan [C] <Britt_Jernigan@ryder.com>; Mike Bramblett [C] <Mike_Bramblett@ryder.com>;
> Tony Hines [C] <Tony_Hines@ryder.com>; Marquita Weaver [C] <Marquita_Weaver@ryder.com>; Nina
> Nguyen [C] <Nina_Nguyen@ryder.com>
> **Subject:** Re: The scanner and the wire attached
>
> **RYDER CAUTION**: This email originated from outside of the organization and may have
> malicious content. Be cautious when clicking on links or opening attachments
> Ok, im up here waiting on yall
>
> Sent from Yahoo Mail on Android
>
> On Mon, May 23, 2022 at 9:33 AM, Britt Jernigan [C]
> <Britt_Jernigan@ryder.com> wrote:
>
>> Francois, Nina will be the one to answer this question.
>>
>> Thanks
>>
>> Britt
>>
>> ---
>>
>> **From:** Francois Johnson <francois.johnson@ymail.com>
>> **Sent:** Monday, May 23, 2022 9:18 AM
>> **To:** Britt Jernigan [C] <Britt_Jernigan@ryder.com>; Mike Bramblett [C]
>> <Mike_Bramblett@ryder.com>; Tony Hines [C] <Tony_Hines@ryder.com>; Marquita Weaver [C]
>> <Marquita_Weaver@ryder.com>; Nina Nguyen [C] <Nina_Nguyen@ryder.com>
>> **Subject:** Re: The scanner and the wire attached
>>
>> **RYDER CAUTION**: This email originated from outside of the organization and may have
>> malicious content. Be cautious when clicking on links or opening attachments
>> Morning Britt, im at this Baptist minor medical clinic, and since this happened at work
>> they will not treat me until they get approval from the company. The phone number is
>> 662-893-1166, i would appreciate a quick response time. Im sleepy and i keep getting
>> shots of little pain running from my left finger tips up to my neck. Please and thank you.
>> Give them (at Baptist) my name, thanks

Exh
22

## Re: Attendance, written warning

**Francois Johnson** <francois.johnson@ymail.com>

Thu 5/26/2022 7:20 AM

To: Francois Johnson <francois.johnson@ymail.com>;Britt Jernigan [C] <Britt_Jernigan@ryder.com>;Tony Hines [C] <Tony_Hines@ryder.com>;Nina Nguyen [C] <Nina_Nguyen@ryder.com>;Marquita Weaver [C] <Marquita_Weaver@ryder.com>

**RYDER CAUTION:** This email originated from outside of the organization and may have malicious content. Be cautious when clicking on links or opening attachments.

Good morning, what i need is a blown up copy of my punches, time , date. THat is my problem. I am dealing with a person in Ryder Human Relations department and because the verbal warning has lines drawn through dates and times, i cannot explain my arguments with and to the human relations guy. If you would email me a ledgeable copy. Then i can be better prepared to defend my actions

Sent from Yahoo Mail on Android

On Wed, May 25, 2022 at 8:12 AM, Francois Johnson <francois.johnson@ymail.com> wrote:

> Nina , i would like to have a meeting with the ( 3) of you to address my punches. I need clarity because at this point I am having a hard time understanding , some of dated punches, and all the policies associated with this attendace policy and this disciplinary action, that has now taken place conveniently after my displeasure of being denied shift differential and denied promotion to the 3rd shift lead position, and I believe it is connected to my on the job injury, that i reported on May 23, 2022 about some exposed wires attached to a hand scanner which is an essential work device ,which punched my left hand , which resulted in me receiving a tetanus vaccine shot at the company expense, but it caused me shocks of pain from my, hand up to my shoulder and neck. It is my wish that a time and date be communicated by way of this email feed, so that all will be on the same page, and what to be discussed. But if you dont feel the need to meet well communicate that too.
>
> Please and thank you .
>
> Sent from Yahoo Mail on Android

23  1 of 2

10:41



# ALL MIDWEST EMPLOYEES

YOU MUST USE ALL AVAILABLE PTO WHEN YOU ARE ABSENT. *THERE IS NO UNPAID TIME OFF.* FOR EXAMPLE, IF YOU MISS 8 HOURS OF SCHEDULED WORK YOU MUST USE 8 HOURS OF PTO IF AVAILABLE.

*THERE WILL BE NO ATTENDANCE PENALTIES DURING THE COVID-19 HEALTH EVENT.*

## Details

May 8, 2022 6:50 AM

8/10/23, 11:25 AM
Case 2:23-cv-02554-SHL-atc   Document 1   Filed 08/31/23   Page 58 of 112
PageID 58
Yahoo Mail - RE: My separation letter sent yesterday morning
23  2 of 2



**20220508_065051.jpg**

/Internal storage/DCIM/Camera

3.16 MB    4032x3024

3915 Clarke Rd, Memphis, TN 38115, USA   >

Samsung SM-N950U

F1.7    1/10 s    4.30mm    ISO 200

## Fw: Ryder Employee Relations

From:  Francois Johnson (francois.johnson@ymail.com)

To:    tjohnson0099@yahoo.com; francois.johnson@ymail.com

Date:  Wednesday, August 10, 2022 at 11:06 AM CDT

----- Forwarded Message -----
**From:** Adam James <adam_james@ryder.com>
**To:** Francois Johnson <francois.johnson@ymail.com>
**Sent:** Thursday, June 16, 2022 at 01:37:07 PM CDT
**Subject:** RE: Ryder Employee Relations

Hi Francois

I have no written procedure. The concern you opened back in early April was investigated and sent for review on 5.12.22. The Compliance and Ethics Team just completed the review which is why I sent you closure..

As of now I see no connection to your prior concern to your current attendance issues.

**Adam James**
Employee Relations

**Ryder System, Inc.**
M: 518-914-8888
adam_james@ryder.com

www.ryder.com

**FLEET MANAGEMENT  I  SUPPLY CHAIN SOLUTIONS**



**From:** Francois Johnson <francois.johnson@ymail.com>
**Sent:** Thursday, June 16, 2022 2:31 PM
**To:** Adam James <Adam_james@ryder.com>
**Subject:** RE: Ryder Employee Relations

**RYDER CAUTION:** This email originated from outside of the organization and may have malicious content.  Be cautious when clicking on links or opening attachments.

Case 2:23-cv-02554-SHL-atc    Document 1    Filed 08/31/23    Page 60 of 112    PageID 60

No.
25

## Morning meeting

From:    Francois Johnson (francois.johnson@ymail.com)

To:      britt_jernigan@ryder.com; nina_nguyen@ryder.com; tony_hines@ryder.com; mike_bramblett@ryder.com

Cc:      marquita_weaver@ryder.com

Date:    Wednesday, June 8, 2022 at 08:17 AM CDT


Per our conversation with you , Tony and myself,  i feel that I am being bullied for asking questions. By being told that I have to go through my supervisor, who just as yourself  is a subordinate . This is the first company I have ever worked for that dosen't have an open door policy. And fail to show ,or provide  that work policy  that says that a chain of commands must be followed in order to voice your opinions and questions from a  Human Resource Department . And that i will like to request an investigation into the alleged imaginary,  person, place, or thing that is alluding to being  harassed accord to your counseling document,  that you said was going into my personal file without saying who is claiming I am harassing them, to me this is defamation of my character,  for asking questions on issues thst are afftecting my pto. Now since aftrer i brought up about my Adp sayig i requested Pto on May 9,2022, and Antonio Ladon Hines approved it. . Now it is removed, but fortunately  " I Screenshot it.  But  as you can see it was still in the archives,  but the first screenshot  was removed. And this is why I need answers.

*EX 4/44* NO. 26

**Midwest Warehouse**
& DISTRIBUTION SYSTEM

## WRITTEN WARNING

| | |
|---|---|
| **Employee** | **Location** |
| Francois Johnson | Memphis, TN |
| **Incident Date** | **Supervisor** |
| 04/22/22 thru 05/23/22 | Tony Hines |

### Nature of Infraction

| | | |
|---|---|---|
| ☐ violation of work rules | **X excessive absenteeism** | ☐ insubordination |
| ☒ violation of company policy | **X excessive tardiness** | ☐ substandard work |
| ☐ violation of safety rules | ☒ excessive early departure | ☐ other |
| ☐ other rule violation | ☐ other attendance issue | |

**Description of Infraction**

Francois Johnson was issued the first step in the company's progressive Discipline process Associated with attendance on 5/25/22 for the period of 1/1/22 thru 4/21/22. During that period, Francois Johnson had accumulated 33.5 points.

Today Francois Johnson is being issued the 2nd step in the company's progressive discipline process for the period of 4/21/22 thru 5/23/22. During this period, Francois Johnson has accumulated 16 attendance violation points. We must see a dramatic and sustained improvement in the attendance of Francois Johnson.

Further attendance violations may result in additional disciplinary action up to and including termination.

**Comments:**

The employees of Midwest Warehouse are our most valuable resources. The company's business success depends heavily upon the function that each employee performs. Attendance, punctuality, and dependability are very important values to the success of our employees. It is the responsibility of our employees to practice good attendance habits, come to work on time, and following the schedule as outlined by their supervisor / manager. Reliable attendance minimizes any negative impact that absenteeism has on our customers, co-workers and the company.

You have been provided with an additional copy of our attendance policy.

Employee's Signature: *refused to sign*                Date: 6/14/22

Supervisor's signature: *T. ʃᴅᵢₛ*                Date: 6/14/22

HR Signature:                Date:

*Britt Jernigan*                6/14/22

2-2018

Case 2:23-cv-02554-SHL-atc     Document 1     Filed 08/31/23     Page 62 of 112
PageID 62

Exhibit
No. 27

## Retaliation: by way of attendance , defaming my character , continued retaliation

From:   Francois Johnson (francois.johnson@ymail.com)

To:     mike_bramblett@ryder.com; britt_jermigan@ryder.com; tony_hines@ryder.com; nina_nguyen@ryder.com;
        · marquita_weaver@ryder.com; francois.johnson@ymail.com

Date.   Tuesday, June 14, 2022 at 08:30 AM CDT


Britt this morning you called a meeting with me and my supervisor Tony Hines. At this meeting you tell me that since you , mike ,and nina have  noticed that after my verbal warning , last month in may, that i have somehow accumulated enough points to be given a written warning. You have not told me if you consulted with my supervisor on any of the dates. You have never communicated to me  ,nor posted by the time clock that we were out of covid . FRIDAY of last week you just took  the attendance notice down that stated that the attendance policy was not in effect.  My supervisor never wrote me up for attendance. But all these written reprimands and harrassment allegations are brought towads me for inquiring about my pay, was denied  a promotion,  inquiries on who went into adp and falsified that i requested PTO, now I am reprimanded  and placed in my file to have harassed someone.  And i emailed all of yall in a email thst I want an investigation into who is alleging I harassed them. You tell me that the company doesn't give out that information,  but can't explain why I am being targeted,  and counseled for harassment on last week, but today I am being retaliated agaisnt for asking that an investigation be brought , about who said I am harassing them. All this after i reported to HR Nina, I am being discriminated against,  and asked for counseling in that matter.  It appears that the company and its (agents, representatives)  are going to terminate my employment based on a fact that, they are retroactively going back into my time punches, and retroactively getting the points and now with the help of Nina , mike , britt are vehemently seeking to terminate my employment,  even though they placed a notice that attendance would not be followed during covid, and we are still in covid , because hospitals are still requiring that you wear a mask. Also i am being retaliated agaisnt this week because of the fact ,that i went to the doctor , after being punctured in the hand because of  the company  failure to  sucure  exposed  wires , that was placed  incompetently  on sever scanners, and aids and all type diseases are at issues because of the company negligence. I have to do my best to hide this fact daily,  I laugh and smile to push that reality to rest daily.  And in the mist of that, the company constantly invent, and retaliates with a vengeance.  There is no way a person gets repeatedly reprimanded for something thst was in in affect and excused  by Mid West and passed down to management,  and communicated to the employees thst the attendance policy would not be followed. Lastly(1)  I was being penalized for attendance and the system operated as if I was still on 1st shift. (2) in july of last year when i moved to 3rd shift, there was a email dated  on or about July 23, 2021, that was giving my now present supervisor Tony noticed  that I was coming to his shift. (3) This email was telling my supervisor Tony thst he was to send bodies to work on Marquita Weaver's  6th shift, at  and during thst time NO ONE ON TONY SHIFT WANTED TO WORK THST SHIFT, AND TONY TO MY KNOWLEDGE DID NOT SEND ANYONE, because none of the lest last seniority folks wanted the shift ,  SO I VOLUNTEERED TO WORK THE WEEKEND 6TH SHIFT working 7 days a week,. On several emails I communicated to Mike thst I would work weekends for over time only and not permanently. But WHEN business  got really slow again no one wanted the weekend so I told tony , because they the employees crying about working the weekend, tony asked us what days we wanted to work because its very slow. I told him i wanted Tuesday,Wednesday  and Friday off; and once business picked up  i was never told what days to work or be off , so I mostly took off on Tuesday(s) so i would get 1 day off, and cover Marquita's weekend as her unpaid lead. All this retaliation began immediately after Mike denied me a promotion to 3rd shift lead, when he said " I was qualified,  but I had attendance problem and I told mike ,  I have no repimands, I communicated thst to HR , Nina and she and mike ,and  Britt  started  this attack campaign towards me very vehemently,  ignoring that there is a policy posted until last friday ,that attendance would not be followed, and to cloud my file for potential leadership positions  at the. This is occurring back to back, even while the company is negligence about my heath. Nina the HR person , is NEVER AVAILABLE DURING THESE REPRIMANDS. And condones,  and a party to these attacks,  And I want all this retaliation to  stop. The 1st verbal warning should have covered the dates ,because I was re  written up on May 26,2022, and now on June 14, 2022 retroactively,  this is unwarranted harassment  and retaliation and Ryder and MIDWEST  are both causing me harm. Again I want a investigation into this alleged harassment. Because all pertinent people have received my request.


Sent from Yahoo Mail on Android

Case 2:23-cv-02554-SHL-atc    Document 1    Filed 08/31/23    Page 63 of 112    PageID 63

Exn #
28
1 of 2

# Attendance written warning

From: Francois Johnson (francois.johnson@ymail.com)

To:   mike_bramblett@ryder.com; britt_jernigan@ryder.com; nina_nguyen@ryder.com; tony_hines@ryder.com; marquita_weaver@ryder.com

Date: Wednesday, June 15, 2022 at 08:45 AM CDT

Case 2:23-cv-02554-SHL-atc    Document 1    Filed 08/31/23    Page 64 of 112    PageID 64

Exhibit No. 28
2 of 2

Britt on this morning you gave me a written warning from yesterday morning meeting, and appears in Nina ,Mike , and yourself. that a lot of be-foreplay went into this ,and more to come because this written warning doesn't run up to this present date. which means yall planning a big banger which is : your next retaliation move will begin with May 24, 2022 thru whatever date yall planning your move. All your checker moves are predictable. So i would like to request a meeting for all of my REPRIMANDS or the year of 2021, for all my attendance issues in that year. And we will need to discuss why none of this aggression, and the vehement retaliation energy was not on display starting in January of 2021. I need us to go over those documents to see what i did differently in 2021 that my record year without any issues last year. Plus mike you and the new HR lady were both in the same position. Ms. Nina that is what i would like a copy of, # (2) I want to see the company policy that states that an accused can not have an investigation started to find out who is claiming my actions to be harassment. Britt I am still waiting on my copy of the company handbook, Ms. Nina I am still waiting of my copy(s) of me requesting PTO for the 2022 year, because someone other than myself requsted PTO. ALSO MS. NINA, I want to see a email of correspondence on when the company enacted the notice to suspend the attendance policy pending covid, thst . It is my wise for transparency purposes that each of you on my perspective request of you,to respond via email, I just want to make sure i dont get your expressed and implied position on my request, please and thank you. I notice you got all my alleged punches, but I dont understand why I have to beg to get copies of my request PTO. OR a investigation into who said i am harassing them and how . And I am noticing that in each reprimands that the time frames to write me up are suspicious . The verbal warning u made in based on 33 points, the written is based on 16 points, and every time i complaint about being retaliated against. Reported your negligence. The second after I inquired about my PTO . Yall have violated my rights in so many ways. This retaliation needs to stop. In each of your waring , you use the same sham of a defense, and evey time your actions are for dates that have preceded the current dates. And yall well education is leaders say this " we must see a dramatic and sustained improvement in the attendance of the MAN FRANCOIS JOHNSON, but your speech is on groosly expired dates ,because we were in May. Your first speech was on May 25, 2022 - and those dates January thru April 21, 2022 all in the past. Because now we in may. But u say i need a dramatic change ( no I need a time machine is what u meant. Because u REPRIMANDS me again on June the 8, 2022 a second time for April 22, 2022 and say you must see a dramatic and sustained improvement beginning on April 22,2022, but now we are in June. SO WHEN IN THE FUTURE CAN I GET BETTER OR IMPROVE . WELL may 24 ,2022 to the present date will be yalls next grand scheme of retaliation, the bible says " its not if ,but when . Im just recording your smart moves with you.Im the one being harassed also.I want an investigation into this harassment and retaliation, and discrimination.The bible says " that God confuses the wise" says that " if satan would have known ,that it was in God's plan for Lucifer to convince the Jews to kill Jesus, then he ( might not have done it ). Im just Gods plan,. I believe everything happens for a reason. My mama would say " why not me " ,but I digress. Taking notes. So all year long yall been throwing rocks , but the bricks gone have some days too. Remember bugs Bunny and Elmer, that cartoon always put a big smile on my face. The same thing thst makes you laugh, may well make you cry. But "any who" , I be waiting on my requested items. Have a ( nice ) day.

Sent from Yahoo Mail on Android

Exhibit II
29

Fw: 2nd written ,reprimands, it was this date i asked you to investigate o

From:   Francois Johnson (francois.johnson@ymail.com)

To:     tjohnson0099@yahoo.com; francois.johnson@ymail.com

Date:   Wednesday, August 10, 2022 at 11:00 AM CDT


----- Forwarded Message -----
**From:** Francois Johnson <francois.johnson@ymail.com>
**To:** Britt Jernigan [C] <britt_jernigan@ryder.com>; Mike Bramblett [C] <mike_bramblett@ryder.com>; Nina Nguyen [C] <nina_nguyen@ryder.com>; Tony Hines [C] <tony_hines@ryder.com>
**Sent:** Tuesday, June 14, 2022 at 06:42:48 PM CDT
**Subject:** 2nd written ,reprimands, it was this date i asked you to investigate o

This was dated that a incident took place on may 25,2022 through may 27 ,2022, and june 3, after the company had committed negligence with exposed wires that i reported, and went to the minor medical , and was counseled that i was harassing someone or thing, without proof

Exhibit No,
30

## Fw: Ryder Employee Relations

From:   Francois Johnson (francois.johnson@ymail.com)

To:     tjohnson0099@yahoo.com; francois.johnson@ymail.com

Date:   Wednesday, August 10, 2022 at 11:03 AM CDT

----- Forwarded Message -----
**From:** Francois Johnson <francois.johnson@ymail.com>
**To:** "adam_james@ryder.com" <adam_james@ryder.com>
**Cc:** Francois Johnson <francois.johnson@ymail.com>
**Sent:** Thursday, June 16, 2022 at 11:38:59 AM CDT
**Subject:** Re: Ryder Employee Relations

Well conveniently once you started your investigation,  Adam I got written up on May 25, 2022, for attendance issue.
When covid started in 2021, MIDWEST put up a notice saying because of covid, the attendance policy will not e
enforced.  As of last Friday that noticed has been removed, and the company MIDWEST  has not replaced the  notice
with a notice that, we are no longer under covid notice. And that verbal was for January  thru April 22,2022. Then the
company comeback and re- issue the same verbal , and telling me to improve my attendance, and , the company gave
me a written counseling warning alleging that i had harassed someone, but never told me who, but put the warning in
my file , that was on June 8, 2022. Then on June 18, 2022, the company came back and gave me a written warning,
and this was for attendance  from April 22. 2022 thru May 23,2022 and again told me to improve my attendance,  and
the writing is on the wall, they gonna come back and suspend and or terminate my employment  based on May 24, 2022
thru present.It started because of my reporting retaliation after denied promotion.

1 of 4

## Fw: Ryder Employee Relations

From:  Francois Johnson (francois.johnson@ymail.com)

To:   tjohnson0099@yahoo.com; francois.johnson@ymail.com

Date:  Wednesday, August 10, 2022 at 11:05 AM CDT

----- Forwarded Message -----
**From:** Adam James <adam_james@ryder.com>
**To:** Francois Johnson <francois.johnson@ymail.com>
**Sent:** Thursday, June 16, 2022 at 01:37:07 PM CDT
**Subject:** RE: Ryder Employee Relations

Hi Francois

I have no written procedure. The concern you opened back in early April was investigated and sent for review on 5.12.22. The Compliance and Ethics Team just completed the review which is why I sent you closure..

As of now I see no connection to your prior concern to your current attendance issues.

**Adam James**
Employee Relations

**Ryder System, Inc**.
M: 518-914-8888
adam_james@ryder.com

www.ryder.com

**FLEET MANAGEMENT   I   SUPPLY CHAIN SOLUTIONS**



**From:** Francois Johnson <francois.johnson@ymail.com>
**Sent:** Thursday, June 16, 2022 2:31 PM
**To:** Adam James <Adam_james@ryder.com>
**Subject:** RE: Ryder Employee Relations

**RYDER CAUTION:** This email originated from outside of the organization and may have malicious content.  Be cautious when clicking on links or opening attachments.

Exh # 31
2 of 4

## Fw: Ryder Employee Relations

From:  Francois Johnson (francois.johnson@ymail.com)

To:  tjohnson0099@yahoo.com; francois.johnson@ymail.com

Date:  Wednesday, August 10, 2022 at 11:04 AM CDT

----- Forwarded Message -----
**From:** Adam James <adam_james@ryder.com>
**To:** Francois Johnson <francois.johnson@ymail.com>
**Sent:** Thursday, June 16, 2022 at 12:52:29 PM CDT
**Subject:** RE: Ryder Employee Relations

Francois

Let's have the call so I can evaluate the situation better.

**Adam James**
Employee Relations

**Ryder System, Inc.**
M: 518-914-8888
adam_james@ryder.com

www.ryder.com

**FLEET MANAGEMENT   I   SUPPLY CHAIN SOLUTIONS**



**From:** Francois Johnson <francois.johnson@ymail.com>
**Sent:** Thursday, June 16, 2022 1:40 PM
**To:** Adam James <Adam_james@ryder.com>
**Subject:** RE: Ryder Employee Relations

**RYDER CAUTION:** This email originated from outside of the organization and may have malicious content. Be cautious when clicking on links or opening attachments.

Well just investigate it and let me know your findings. But i will not be un represented, so i respectfully decline thst phone meeting. So in these emails, your telling me Ryder has knowledge of midwest handbook and knows thst there is no policy within the midwest handbook about, unilaterally taken employees PTO. And since you know about the write ups ,and Ryder knows about the notice that the attendance policy was not to be followed , you say nothing. So then maybe you can tell me when did MIDWEST recind the policy and give the employees thst same written notice, because that notice was still up until last friday June 10,2022, ill attach the screenshot. Next what date did the

investigation end, and because when your initial investigation started ,you interviewed me, so I can say with all Certainty , your ended investigation doesn't address these new additions, but the investigation has ended. Now YOU WANT ME TO SIT WITH THE SAME FOLKS , without you interviewing me to get my side of the story. Then you tell me you can't reveal to me the offended the person who filed the complaint the results, that is a joke. But im no fool. No sir. No meeting . Just do your investigation. I see this is just a illusion of being concerned. Point taken.

Sent from Yahoo Mail on Android

On Thu, Jun 16, 2022 at 12:17 PM, Adam James

<Adam_james@ryder.com> wrote:

Hi Francois


Ryder has a no record policy.



**Adam James**
Employee Relations

**Ryder System, Inc.**
M: 518-914-8888
adam_james@ryder.com


www.ryder.com

**FLEET MANAGEMENT  I  SUPPLY CHAIN SOLUTIONS**




**From:** Francois Johnson <francois.johnson@ymail.com>
**Sent:** Thursday, June 16, 2022 1:11 PM
**To:** Adam James <Adam_james@ryder.com>
**Subject:** RE: Ryder Employee Relations


**RYDER CAUTION:** This email originated from outside of the organization and may have malicious content. Be cautious when clicking on links or opening attachments.

Adam , i want you to do an independent investigation, then we can hsve thst meeting, that way you will have a written dialogue on what you found, other wise i will be recording the discussion and yall will be informed of my recording before the call begins. .

Sent from Yahoo Mail on Android


On Thu, Jun 16, 2022 at 11:57 AM, Adam James

<Adam_james@ryder.com> wrote:

Hello Francois

I am aware of your concerns about your attendance and the disciplines received.

I have asked Brit to set up a call for all of us to discuss. So we will all be having a call in the coming week or so to discuss.

**Adam James**
Employee Relations

**Ryder System, Inc.**
M: 518-914-8888
adam_james@ryder.com

www.ryder.com

**FLEET MANAGEMENT  I  SUPPLY CHAIN SOLUTIONS**



**From:** Francois Johnson <francois.johnson@ymail.com>
**Sent:** Thursday, June 16, 2022 12:39 PM
**To:** Adam James <Adam_james@ryder.com>
**Cc:** Francois Johnson <francois.johnson@ymail.com>
**Subject:** Re: Ryder Employee Relations

**RYDER CAUTION:** This email originated from outside of the organization and may have malicious content. Be cautious when clicking on links or opening attachments.

Well conveniently once you started your investigation, Adam I got written up on May 25, 2022, for attendance issue. When covid started in 2021, MIDWEST put up a notice saying because of covid, the attendance policy will not e enforced. As of last Friday that noticed has been removed, and the company MIDWEST has not replaced the notice with a notice that, we are no longer under covid notice. And that verbal was for January thru April 22,2022. Then the company comeback and re- issue the same verbal , and telling me to improve my attendance, and , the company gave me a written counseling warning alleging that i had harassed someone, but never told me who, but put the warning in my file , that was on June 8, 2022. Then on June 18, 2022, the company came back and gave me a written warning, and this was for attendance from April 22. 2022 thru May 23,2022 and again told me to improve my attendance, and the writing is on the wall, they gonna come back and suspend and or terminate my employment based on May 24, 2022 thru present.It started because of my reporting retaliation after denied promotion.

Case 2:23-cv-02554-SHL-atc    Document 1    Filed 08/31/23    Page 71 of 112
PageID 71

Exh # 32

Investigation of " written counseling "

Francois Johnson <francois.johnson@ymail.com>

Tue 6/28/2022 1:53 PM

To: Britt Jernigan [C] <Britt_Jernigan@ryder.com>;Mike Bramblett [C] <Mike_Bramblett@ryder.com>;Nina Nguyen [C] <Nina_Nguyen@ryder.com>;Tony Hines [C] <Tony_Hines@ryder.com>;Francois Johnson <francois.johnson@ymail.com>

**RYDER CAUTION**: This email originated from outside of the organization and may have malicious content. Be cautious when clicking on links or opening attachments.

Mr. Britt , in reference to the written counseling . Since it is the company both Ryder and Midwest policy as you indicated and both expressed and implied to not give me the accused harasser the name of the accuser (s)  The company(s) and its representative are damaging my character by defaming my name and character. Since I cannot be an investigation into matter, I request that yall remove that shame couseling warning, because it appears no one was harmed within the company, as alleged, but only me. And I am very disturbed, because my employment hangs in the balance.

Sent from Yahoo Mail on Android

7/25/22, 4:13 AM                                   Mail - Marquita Weaver [C] - Outlook

_EXh #_
_33_

RE: Managements retaliation and constant Harassment and bullying me

Mike Bramblett [C] <Mike_Bramblett@ryder.com>

Fri 7/22/2022 11:01 AM

To: Tony Hines [C] <Tony_Hines@ryder.com>

Tony

Can you please communicate to Francois that there is a meeting scheduled for Monday morning for us to
address her issues in the boardroom.

Please ensure that he is present

I will send a calendar invite to you, Marquita, and Nina for this meeting

w/

Mike

From: Francois Johnson <francois.johnson@ymail.com>
Sent: Friday, July 22, 2022 10:32 AM
To: Nina Nguyen [C] <Nina_Nguyen@ryder.com>; Britt Jernigan [C] <Britt_Jernigan@ryder.com>; Mike Bramblett
[C] <Mike_Bramblett@ryder.com>; Tony Hines [C] <Tony_Hines@ryder.com>; Marquita Weaver [C]
<Marquita_Weaver@ryder.com>
Subject: Managements retaliation and constant Harassment and bullying me

**RYDER CAUTION:** This email originated from outside of the organization and may have malicious content.  Be
cautious when clicking on links or opening attachments.

The week of July 10 thru 16 the people that does payroll someone took without my permission again went into my
ATP and took 8 this person of my PTO, this is retaliation against me took 8 hrs. The meeting last week said that
Ryder has implemented its new pay scale, and that Ryder do not take PTO , that if you don't use your PTO that
Ryder would cut you a check. It is a fact that there is no policy or procedure at Mid-West that says or confirms that
PTO will be taken when the company instruct the Supervisor to cut manpower because of lack of work , and then
the employee suffer by taking their PTO.

If this is a policy or procedure, I need to see this document, I am being retaliated against because of my PTO
complaint, because at no time in the past have the company took my PTO because that and heads ( instruted the
supervisor to send employees home. I have short hours because of the company decision and not of my own
doing. And I want an investigation into this harassment.

And I need to ask the for showing I requested PTO, My supervisor tony communicated with me that my PTO would
not be used because of lack of work - being sent home, I would like my PTO to be credited back, and at the
company's expense. Furthermore, I want this constant retaliation to stop. I feel I am being bullied harassed,
and would like a investigation into this matter.

https://outlook.office.com/mail/id/AAQkADhmYTBkM2ZiLTI0OGEtNGNkZi04NmQxLWI5NDIvMiQ1ZmViNgAQANdugqG3R0spsSLNYpfrfwY%3D/sxs/A...    1/1

Case 2:23-cv-02554-SHL-atc    Document 1    Filed 08/31/23    Page 73 of 112    PageID 73

Exh # 34

## Attendance policy reactivation

**Francois Johnson** <francois.johnson@ymail.com>

Fri 7/15/2022 12:50 PM

To: Nina Nguyen [C] <Nina_Nguyen@ryder.com>;Britt Jernigan [C] <Britt_Jernigan@ryder.com>;Mike Bramblett [C] <Mike_Bramblett@ryder.com>;Tony Hines [C] <Tony_Hines@ryder.com>;Marquita Weaver [C] <Marquita_Weaver@ryder.com>

**RYDER CAUTION**: This email originated from outside of the organization and may have malicious content. Be cautious when clicking on links or opening attachments.

I am still waiting on correspondence on the date the attendance policy was put back into action. I feel retaliation is the motive. My file has been wrongfully tarnished and has caused me future jobs within the company. So can i please be given the date thst after it was engaged, the date it was no longer engaged

Sent from Yahoo Mail on Android

EXHIBIT
35

Fw: Meeting that took place 7-26-22

From:  Francois Johnson (francois.johnson@ymail.com)

To:    tjohnson0099@yahoo.com; francois.johnson@ymail.com

Date:  Wednesday, August 10, 2022 at 11:09 AM CDT

----- Forwarded Message -----
**From:** Francois Johnson <francois.johnson@ymail.com>
**To:** Nina Nguyen [C] <nina_nguyen@ryder.com>; Mike Bramblett [C] <mike_bramblett@ryder.com>; Parker Anderson [C] <parker_anderson@ryder.com>; Tony Hines [C] <tony_hines@ryder.com>; Marquita Weaver <marquita_weaver@ryder.com>; francois.johnson@ymail.com <francois.johnson@ymail.com>
**Sent:** Monday, August 1, 2022 at 11:05:33 AM CDT
**Subject:** Meeting that took place 7-26-22

Mrs.Nina,  morning  , I observed you at our meeting taking notes and Mike Bramblett himself conducted this meeting. I am asking for clarity for me for the present and near future , to email me the date that Mike said that the attendance policy was re enacted,  and the details associated with the re engagement, as he referred to over (2) emails that he alleged  is proof of  that re activation after deactivation

Please and thank you, it was a pleasure to have you and Mr. Parker present.

Sent from Yahoo Mail on Android

*Exh # 36*



& DISTRIBUTION SYSTEM

## Midwest Warehouse Absenteeism Tracking System

Effective: May 1, 2019

*The employees of Midwest Warehouse are our most valuable resources. The company's business success depends heavily upon the function that each employee performs. Attendance, punctuality, and dependability are very important values to the success of our employees. It is the responsibility of our employees to practice good attendance habits, come to work on time, and following the schedule as outlined by their supervisor / manager. Reliable attendance minimizes any negative impact that absenteeism has on our customers, co-workers and the company. To help meet the attendance requirement of each employee's job, Midwest Warehouse uses a points based system to track absenteeism.*

The goal of the points system is to identify and eliminate poor attendance. The program works by tracking absenteeism with cumulative points on an **annual basis**. Measured points, as described below apply in the event of an employee's absence.

| UNEXCUSED ABSENCES | | |
|---|---|---|
| **Infraction** | **Description** | **Points Assessed** |
| Tardy | Arrive late or leave early   (3 minutes late is a tardy) | 1/2 |
| Unexcused Absence | Any unexcused absence from work (Documentation required for absences of 3 or more consecutive days) | 1 (includes consecutive days) |
| No Call/No Show | No call and do not report to work | 5 |
| 3 consecutive days of No Call/No Show is considered voluntary job abandonment | | |

Absences not tracked with points are defined below. Also, not tracked with points are scheduled appointments that provide at least 3-days' notice along with supporting documentation. **We will not excuse absences where an employee presents documentation but fails to give 3 days' advance notice.** This program does not replace your obligation to our Attendance and Call-In procedures outlined in the Employee Manual.

| EXCUSED ABSENCES | |
|---|---|
| Approved absence for scheduled appointment (with 3 days' advance notice and supporting documentation) | |
| • **Bereavement** (as defined in the company handbook) | • **Approved FMLA** |
| • **Approved and Scheduled PTO** | • **Jury Duty** (with supporting documentation) |
| • **Disciplinary Suspensions** | • **Workers' Compensation** |
| • **Military Leave** | |
| • **Court Appearances** (with supporting documentation) | |

Failure to comply with our Attendance and Call-In procedures or maintain a satisfactory attendance record will lead to progressive disciplinary action, up to and including termination.

Case 2:23-cv-02554-SHL-atc    Document 1    Filed 08/31/23    Page 76 of 112
PageID 76

Exhibit # 37
1 of 2

# Re: meeting on alleged PTO request, and instructions on viewing time punches in mobile ADP

From:  Francois Johnson (francois.johnson@ymail.com)

To:    Britt_Jernigan@ryder.com

Date:  Saturday, June 4, 2022 at 12:09 PM CDT

Apparently this email is grossly misunderstood.  I am requesting from Nina based on her response thst i could look at my punches ob my (ADP mobile app) please stop misconstruing my very plainly worded request.  Ms. Nina said thst the other employees knows how to view thier  (time punches ) on our ADP app. I am asking her to email or write me the instructions, because In my broken  grammar. " ain't  NO ONE SHOWED ME HOW, MY SUPERVISOR DONT KNOW ABOUT THAT FUNCTION.        AGAIN not to be misconstrued. I do want a meeting with all of  you mention in ,this email. I want to see all my requests up to this present date , mainly because  about 2 weeks ago, i check my PTO and i screenshot a message saying that i requested 24 hours of PTO from my app or written request,  because i did not do so. But this  Adp system alleges  i did ,and I am not in agreement,  because I did not and  someone has  fraudulent hacked my adp , and lied on me. And for clarity I want to find out WHO LIED ON ME. THIS is what I want to discuss and discover who , forged my unreqested request on my behalf,  without my written,  neither  expressed or implied consent. I need answers. Please Nina sent up a meeting . Please communicate by email so all above  will have notice. Now if I have a 12tj grade edumacation , you can call me a little  ignorant,  but college graduates understanding should be more superior.  Lets get it done.  Have a great afternoon.

Sent from Yahoo Mail on Android

> On Sat, Jun 4, 2022 at 9:31 AM, Britt Jernigan [C]
> <Britt_Jernigan@ryder.com> wrote:
>
> Mr. Johnson,
>
> As we discussed the other day if you want to see your punches, please see your supervisor. On your PTO, it is Midwest policy that if you are absent and have PTO for it to be used.
>
> The lights that are out was reported to Johnson equipment.  Daryl and I went through each door.
>
> I will set up a meeting next week to discuss further if you would like.
>
> Thank you for all you do
>
> Britt Jernigan
>
> Get Outlook for iOS
>
> **From:** Francois Johnson <francois.johnson@ymail.com>
> **Sent:** Friday, June 3, 2022 7:47:56 PM
> **To:** Britt Jernigan [C] <Britt_Jernigan@ryder.com>; Mike Bramblett [C] <Mike_Bramblett@ryder.com>; Nina Nguyen [C] <Nina_Nguyen@ryder.com>; Tony Hines [C] <Tony_Hines@ryder.com>; Marquita Weaver [C] <Marquita_Weaver@ryder.com>; Francois Johnson <francois.johnson@ymail.com>
> **Subject:** meeting on alleged PTO request, and instructions on viewing time punches in mobile ADP
>
> **RYDER CAUTION:** This email originated from outside of the organization and may have malicious content.  Be cautious when clicking on links or opening attachments.
>
> Nina I am just touching bases with you on when can I expect instructions on how I may gain access in the mobile ADP app. to view my daily punches, as of today I have not received any communications from you HR as it relates to  my request  to be instructed how to gain such knowledge.

Case 2:23-cv-02554-SHL-atc    Document 1    Filed 08/31/23    Page 77 of 112    PageID 77

Exhibit #37

2 of 2

Secondly, I requested a meeting to see any records to date of my requesting PTO by way of ADP, or any written request form I have signed . I am requesting a appointment time and date, ( acquiescence ) = that is saying nothing and doing nothing , is not an option  Please and Thank you. I am looking forward to putting this to rest.

Hopefully this can be arranged  in house and not have to be taking to the out of state HR office to get and keep transparency and integrity " of a process " at the forefront  of operations and policies .

P.S. We have dock door lights and locks not in operation, we don't need any more Q situations.

As you know Ryder has a captain of the ship policy, Process, Process. Process !

Sincerely ,
Mr. Francois Johnson Sr

The information contained in this electronic communication and any accompanying document is confidential, may be
attorney-client privileged, and is intended only for the use of the addressee. It is the property of Ryder System, Inc. Unauthorized use, disclosure or copying of this communication, or any part of it, is strictly prohibited and may be unlawful.  If you have received this communication in error, please notify the sender immediately by return
email, and destroy this communication and all copies of it, including all attachments. Electronic communication may be susceptible to data corruption, interception and unauthorized tampering and Ryder disclaims all liability of any kind for such actions or any consequences that may arise directly or indirectly therefrom.

Case 2:23-cv-02554-SHL-atc      Document 1     Filed 08/31/23     Page 78 of 112
PageID 78

## 3rd shift lead position

From:    Francois Johnson (francois.johnson@ymail.com)

To:      mikebramblett@midwestwarehouse.com

Date:    Tuesday, February 1, 2022 at 09:26 AM CST


Morning Mr. Mike i will like to included in the shift lead pot for my shift. And will like to be notified so i can apply thank you for your support.

Sent from Yahoo Mail on Android

**Midwest**
**Warehouse**
& DISTRIBUTION SYSTEM

*Exh # 39*
*1 of 5*

## VERBAL WARNING

| Employee | Location |
|---|---|
| Francois Johnson | Memphis, TN |
| **Incident Date** | **Supervisor** |
| 01/01/22 through 04/21/22 | Tony Hines |

### Nature of Infraction

| | | |
|---|---|---|
| ☐ violation of work rules | **X** *excessive absenteeism* | ☐ insubordination |
| ☐ violation of company policy | **X** *excessive tardiness* | ☐ substandard work |
| ☐ violation of safety rules | ☒ excessive early departure | ☐ other |
| ☐ other rule violation | ☐ other attendance issue | |

### Description of Infraction

Francois Johnson has accumulated 33.5 attendance violation points during the period January 01 through April 21, 2022. The Midwest attendance policy requires a verbal warning be issued. He is to permanently improve his attendance.

Further attendance violations may result in additional disciplinary action up to and including termination.

**Comments:**

The employees of Midwest Warehouse are our most valuable resources. The company's business success depends heavily upon the function that each employee performs. Attendance, punctuality, and dependability are very important values to the success of our employees. It is the responsibility of our employees to practice good attendance habits, come to work on time, and following the schedule as outlined by their supervisor / manager. Reliable attendance minimizes any negative impact that absenteeism has on our customers, co-workers and the company.

You have been provided with an additional copy of our attendance policy.

| | |
|---|---|
| Employee's Signature: | Date: |
| Supervisor's signature: *Tony Hines* | Date: |
| HR Signature: | Date: |

2-2018

*Refused to sign Brett Langer*

*Exh # 39*
*14*
*2 of 5*

## Attendance Exceptions

**Johnson Sr, Francois Denis** ➤

XXX XX-5905    EGV235905    11/04/2019    Active    &lt;STATUS IS ACTIVE&gt; 🔍

| DATE | TRACKING CODE | HOURS | POINTS | CURRENCY | TIMECARD EXCEPTION | PAY CODE | EXCUSED | NOTE |
|------|---------------|-------|--------|----------|--------------------|----------|---------|------|
| 04/21/2022 | Late In Tracking Code (LATEIN) | 013 | 0.5000 | | 1 Clocked In Late | *11:08PM* | ✓ | — |
| 04/20/2022 | Early Out Tracking Code (ERLOUT) | 262 | 0.5000 | | 1 Clocked Out Early | | ✓ | *schedule* |
| 04/19/2022 | Early Out Tracking Code (ERLOUT) | 770 | 0.5000 | | 1 Clocked Out Early | | → | *schedule* |
| 04/18/2022 | Early Out Tracking Code (ERLOUT) | 10.42 | 0.5000 | | 1 Clocked Out Early | *4:35AM* | ✓ | |
| 04/17/2022 | Early Out Tracking Code (ERLOUT) | 797 | 0.5000 | | 1 Clocked Out Early | | ✓ | *?schedule?* |
| 04/14/2022 | No Call No Show (NCNS) | 0.00 | 5.0000 | | 1 | *NCNS* | ✓ | — |
| 04/13/2022 | Late In Tracking Code (LATEIN) | 077 | 0.5000 | | 1 Clocked In Late | *11:46PM* | ✗ | |
| 04/13/2022 | Early Out Tracking Code (ERLOUT) | 800 | 0.5000 | | 1 Clocked Out Early | | ✓ | *schedule* |
| 04/12/2022 | No Call No Show (NCNS) | 0.00 | 5.0000 | | 1 | *NCNS* | ✓ | — |
| 04/11/2022 | Early Out Tracking Code (ERLOUT) | | 0.5000 | | 1 Clocked Out Early | | ✓ | *schedule* |
| 04/11/2022 | Early Out Tracking Code (ERLOUT) | 790 | 0.5000 | *OK* | 1 Clocked Out Early | | | |
| 04/07/2022 | Early Out Tracking Code (ERLOUT) | 802 | 0.5000 | *OK* | 1 Clocked Out Early | *6:59AM* | | |
| 04/06/2022 | Early Out Tracking Code (ERLOUT) | 8.00 | 0.5000 | *OK* | 1 Clocked Out Early | | | |
| 04/05/2022 | Absent Unexcused (ABSENT UNEX) | 0.00 | 10.000 | | 1 | *ABSENT UNEX* | *Tue* | |
| 04/04/2022 | Early Out Tracking Code (ERLOUT) | 777 | 0.5000 | *OK* | 1 Clocked Out Early | | | |
| 04/03/2022 | Early Out Tracking Code (ERLOUT) | 767 | 0.5000 | *OK* | 1 Clocked Out Early | | | |
| 03/31/2022 | Early Out Tracking Code (ERLOUT) | 790 | 0.5000 | *OK* | 1 Clocked Out Early | | | |
| 03/30/2022 | Late In Tracking Code (LATEIN) | 007 | 0.5000 | *OK* | 1 Clocked In Late | *11:04PM* | | |
| 03/31/2022 | Early Out Tracking Code (ERLOUT) | 7.25 | 0.5000 | *OK* | 1 Clocked Out Early | | | |
| 03/29/2022 | Absent Unexcused (ABSENT UNEX) | 0.00 | 10.000 | | 1 | *ABSENT UNEX* | | |
| 03/28/2022 | Early Out Tracking Code (ERLOUT) | 800 | 0.5000 | *OK* | 1 Clocked Out Early | | | |
| 03/27/2022 | Early Out Tracking Code (ERLOUT) | 743 | 0.5000 | *OK* | 1 Clocked Out Early | | | |
| 03/24/2022 | Early Out Tracking Code (ERLOUT) | 782 | 0.5000 | *OK* | 1 Clocked Out Early | | | |
| 03/23/2022 | Early Out Tracking Code (ERLOUT) | 717 | 0.5000 | *OK* | 1 Clocked Out Early | | | |
| 03/22/2022 | Absent Unexcused (ABSENT UNEX) | 0.00 | 10.000 | | 1 | *ABSENT UNEX* | | |
| 03/21/2022 | Early Out Tracking Code (ERLOUT) | 748 | 0.5000 | *OK* | 1 Clocked Out Early | | | |
| 03/20/2022 | Early Out Tracking Code (ERLOUT) | 785 | 0.5000 | *OK* | 1 Clocked Out Early | | | |
| 03/17/2022 | Early Out Tracking Code (ERLOUT) | 798 | 0.5000 | *OK* | 1 Clocked Out Early | | | |
| 03/16/2022 | Early Out Tracking Code (ERLOUT) | 802 | 0.5000 | | 1 Clocked Out Early | *6:59AM* | | |
| 03/15/2022 | Early Out Tracking Code (ERLOUT) | 758 | 0.5000 | *OK* | 1 Clocked Out Early | | | |
| 03/14/2022 | Early Out Tracking Code (ERLOUT) | 747 | 0.5000 | *OK* | 1 Clocked Out Early | | | |
| 03/13/2022 | Early Out Tracking Code (ERLOUT) | 790 | 0.5000 | *OK* | 1 Clocked Out Early | | | |
| 03/11/2022 | Late In Tracking Code (LATEIN) | 005 | 0.5000 | | 1 Clocked In Late | *11:03PM* | | |
| 03/10/2022 | Early Out Tracking Code (ERLOUT) | 800 | 0.5000 | *OK* | 1 Clocked Out Early | | | |
| 03/09/2022 | Early Out Tracking Code (ERLOUT) | 800 | 0.5000 | *OK* | 1 Clocked Out Early | | | |
| 03/08/2022 | Absent Unexcused (ABSENT UNEX) | 0.00 | 10.000 | | 1 | *ABSENT UNEX* | | |

*OK means from clocked out after 7AM*

| Date | Tracking Code | Hours | | OK | Note | Time |
|---|---|---|---|---|---|---|
| 03/07/2022 | Early Out Tracking Code (ERLOUT) | 7.91 | 0.5000 | OK | 1 Clocked Out Early | |
| 03/06/2022 | Early Out Tracking Code (ERLOUT) | 7.15 | 0.5000 | | 1 Clocked Out Early – | 6:30 AM |
| 03/04/2022 | Absent Unexcused (ABSENT UNEX) | 0.00 | 1.0000 | | 1 | ABSENT UNEX |
| 03/03/2022 | Early Out Tracking Code (ERLOUT) | 8.02 | 0.5000 | | 1 Clocked Out Early | 6:59 AM |
| 03/02/2022 | Early Out Tracking Code (ERLOUT) | 8.00 | 0.5000 | OK | 1 Clocked Out Early | |
| 03/01/2022 | Early Out Tracking Code (ERLOUT) | 8.03 | 0.5000 | | 1 Clocked Out Early | 6:58 AM |
| 02/28/2022 | Early Out Tracking Code (ERLOUT) | 7.81 | 0.5000 | OK | 1 Clocked Out Early | |
| 02/22/2022 | Absent Unexcused (ABSENT UNEX) | 0.00 | 1.0000 | | 1 | ABSENT UNEX |
| 02/17/2022 | Early Out Tracking Code (ERLOUT) | 7.87 | 0.5000 | OK | 1 Clocked Out Early | |
| 02/16/2022 | Absent Unexcused (ABSENT UNEX) | 0.00 | 1.0000 | | 1 | ABSENT UNEX |
| 02/15/2022 | Early Out Tracking Code (ERLOUT) | 8.03 | 0.5000 | | 1 Clocked Out Early | 6:58 AM |
| 02/15/2022 | Late In Tracking Code (LATEIN) | 0.32 | 0.5000 | | 1 Clocked In Late | 11:19 PM |
| 02/14/2022 | Early Out Tracking Code (ERLOUT) | 8.05 | 0.5000 | | 1 Clocked Out Early | 6:57 AM |
| 02/11/2022 | Early Out Tracking Code (ERLOUT) | 7.81 | 0.5000 | OK | 1 Clocked Out Early | |
| 02/10/2022 | Early Out Tracking Code (ERLOUT) | 8.00 | 0.5000 | OK | 1 Clocked Out Early | |
| 02/09/2022 | Early Out Tracking Code (ERLOUT) | 7.93 | 0.5000 | OK | 1 Clocked Out Early | |
| 02/08/2022 | Early Out Tracking Code (ERLOUT) | 7.75 | 0.5000 | OK | 1 Clocked Out Early | |
| 02/07/2022 | Absent Unexcused (ABSENT UNEX) | 0.00 | 1.0000 | | 1 | ABSENT UNEX |
| 02/06/2022 | Early Out Tracking Code (ERLOUT) | 7.87 | 0.5000 | OK | 1 Clocked Out Early | |
| 02/04/2022 | Late In Tracking Code (LATEIN) | 0.12 | 0.5000 | | 1 Clocked In Late | 11:07 PM |
| 02/03/2022 | Early Out Tracking Code (ERLOUT) | 7.90 | 0.5000 | OK | 1 Clocked Out Early | |
| 02/02/2022 | Late In Tracking Code (LATEIN) | 1.36 | 0.5000 | | 1 Clocked In Late | 12:21 AM |
| 02/02/2022 | Absent Unexcused (ABSENT UNEX) | 0.00 | 1.0000 | OK | 1 | ABSENT UNEX |
| 02/02/2022 | Early Out Tracking Code (ERLOUT) | 7.98 | 0.5000 | OK | 1 Clocked Out Early | |
| 01/31/2022 | Early Out Tracking Code (ERLOUT) | 8.00 | 0.5000 | OK | 1 Clocked Out Early | |
| 01/31/2022 | Late In Tracking Code (LATEIN) | 0.07 | 0.5000 | | 1 Clocked In Late | 11:04 PM |
| 01/27/2022 | Early Out Tracking Code (ERLOUT) | 8.03 | 0.5000 | | 1 Clocked Out Early | 6:58 AM |
| 01/26/2022 | Absent Unexcused (ABSENT UNEX) | 0.00 | 1.0000 | | 1 | ABSENT UNEX |
| 01/25/2022 | Early Out Tracking Code (ERLOUT) | 8.00 | 0.5000 | OK | 1 Clocked Out Early | |
| 01/24/2022 | Early Out Tracking Code (ERLOUT) | 8.00 | 0.5000 | OK | 1 Clocked Out Early | |
| 01/21/2022 | Late In Tracking Code (LATEIN) | 0.32 | 0.5000 | | 1 Clocked In Late | 11:19 PM |
| 01/20/2022 | Early Out Tracking Code (ERLOUT) | 7.87 | 0.5000 | OK | 1 Clocked Out Early | |
| 01/18/2022 | Late In Tracking Code (LATEIN) | 0.05 | 0.5000 | | 1 Clocked In Late | 11:03 PM |
| 01/18/2022 | Early Out Tracking Code (ERLOUT) | 7.91 | 0.5000 | OK | 1 Clocked Out Early | |
| 01/17/2022 | Early Out Tracking Code (ERLOUT) | 8.21 | 0.5000 | | 1 Clocked Out Early | 6:46 AM |
| 01/14/2022 | Late In Tracking Code (LATEIN) | 0.12 | 0.5000 | | 1 Clocked In Late | 11:07 PM |
| 01/13/2022 | Late In Tracking Code (LATEIN) | 0.05 | 0.5000 | | 1 Clocked In Late | 11:03 PM |
| 01/12/2022 | Late In Tracking Code (LATEIN) | 0.08 | 0.5000 | | 1 Clocked In Late | 11:05 PM |
| 01/11/2022 | Absent Excused (ABSENT) | 0.00 | 0.0000 | | 1 | ABSENT |

Exh. 39

4 of 5

| Date | Code | | | | Status |
|------|------|--|--|--|--------|
| 01/06/2022 | Absent Unexcused (ABSENT UNEX) | 0.00 | 1.0000 | | 1 |
| 01/05/2022 | Early Out Tracking Code (ERLOUT) | 8.00 | 0.5000 OK | | 1 Clocked Out Early |
| 01/05/2022 | Late In Tracking Code (LATEIN) | 0.07 | 0.5000 OK | | 1 Clocked In Late |
| 01/04/2022 | Early Out Tracking Code (ERLOUT) | 8.00 | 0.5000 OK | | 1 Clocked Out Early |
| 01/03/2022 | Late In Tracking Code (LATEIN) | 0.07 | 0.5000 | | 1 Clocked In Late |
| 01/03/2022 | Early Out Tracking Code (ERLOUT) | 7.60 | 0.5000 OK | | 1 Clocked Out Early |
| 01/02/2022 | Early Out Tracking Code (ERLOUT) | 7.95 | 0.5000 OK | | 1 Clocked Out Early |

(ABSENT UNEX)

~~11:04PM~~

11:04 PM

11:04 PM

~~NC/NS 10~~

NC/NS      10
Absent Unex  10
Late IN      7.5
Early Out    5
───────────────
             33.5

Exh # 34

5 of 5

## Individual Timecard @ ◼ ⟋

**Johnson Sr, Francois Denis** ❯

XXX XX 5905    EGV235905    11/04/2019    Active    <STATUS IS ACTIV

Field Grabber

Range of Date    4 11 2022 📅    4 21 2022 📅    Q FIND

| | Timecard | | Totals | Schedule | Time Off Balances | | | | |
|---|---|---|---|---|---|---|---|---|---|

| | APPROVE | WEEK 1 | | IN - OUT | | PAY CODE | HOURS | DEPARTMENT | DAILY TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|
| | ✓ | Mon | 04/11 | 11:00 PM | - 07:00 AM | | 7.50 | 285 | 7.50 | ⟋ |
| | ✓ | Tue | 04/12 | 11:00 PM | - 11:00 PM | NCNS | 0.00 | 285 | 0.00 | |
| | ✓ | Wed | 04/13 | 11:46 PM | - 07:00 AM | | 6.75 | 285 | 6.75 | ⟋ |
| | ✓ | Thu | 04/14 | 11:00 PM | - 11:00 PM | NCNS | 0.00 | 285 | 0.00 | |
| | ✓ | Fri | 04/15 | 10:52 PM | - 07:56 AM | | 7.50 | 285 | 7.50 | |
| | ✓ | Sat | 04/16 | 10:56 PM | - 07:05 AM | | 7.50 | 285 | 7.50 | |
| | ✓ | Sun | 04/17 | 11:00 PM | - 07:02 AM | | 7.50 | 285 | 7.50 | ⟋ |
| | | | | | | | | **WEEK 1 TOTALS** | 36.75 | |

| | APPROVE | WEEK 2 | | IN - OUT | | PAY CODE | HOURS | DEPARTMENT | DAILY TOTALS | |
|---|---|---|---|---|---|---|---|---|---|---|
| | ✓ | Mon | 04/18 | 11:01 PM | - 04:35 AM | | 5.00 | 285 | 5.00 | |
| | ✓ | Tue | 04/19 | 10:58 PM | - 07:18 AM | | 7.75 | 285 | 7.75 | ⟋ |
| | ✓ | Wed | 04/20 | 10:57 PM | - 07:20 AM | | 7.75 | 285 | 7.75 | |
| | ✓ | Thu | 04/21 | 11:08 PM | - 07:00 AM | | 7.25 | 285 | 7.25 | |
| | | | | | | | | **WEEK 2 TOTALS** | 27.75 | |

I don't agree with this because we have a notice today by the time clock that states No action as it relates to Attendance will result in a penalty pending covid 19, and we are still in covid.

My signature just to state I wrote the statment above, 5-25-22



**CONSTANGY**
**BROOKS, SMITH &**
**PROPHETE** LLP

EXH; NO 40

1 of 8

8911 N. Capital of Texas Highway
Bldg 3, Suite 3350
Austin, TX 78759
Telephone: ███████    Facsimile: ███████

September 1, 2022

**Via Upload to Respondent Portal**

U.S. Equal Employment Opportunity Commission
Memphis District Office
1407 Union Avenue, 9th Floor
Memphis, Tennessee 38104

**Re:**    ***Francois D. Johnson v. Midwest Warehouse & Distribution System***
**EEOC Charges No. 490-2022-01539**
**and**
***Francois D. Johnson v. Ryder System, Inc.***
**EEOC Charges No. 490-2022-01540**

Dear Sir/Madam:

The following information and supporting documents represent the written position statement of Respondents Midwest Warehouse & Distribution System ("Midwest") and Ryder Integrated Logistics, Inc., in response to the above identical Charges of Discrimination ("Charges") filed against them by Francois D. Johnson ("Mr. Johnson"). Midwest was acquired by Ryder System, Inc., in the fourth quarter of 2021, and at that time, Mr. Johnson became an employee of Ryder Integrated Logistics, Inc. (rather than Ryder System, Inc., as stated in the Charges). Except as otherwise noted, Mr. Johnson's employer is collectively referred to in this position statement as "Ryder" or "the Company."[1]

Mr. Johnson claims he was denied a promotion in retaliation for complaining about age-based discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"). The Charge also references age discrimination but does not provide any details of the alleged discrimination. As shown in detail below, none of Mr. Johnson's claims have merit. Mr. Johnson works for Ryder as a

---

[1]    By filing this response, Ryder does not waive any legal defenses it may have to the Charges or subsequent litigation, including jurisdictional or procedural defenses. This response is intended to provide only a summary of the Company's position demonstrating that the Charges is without merit, and Ryder reserves the right to present or rely on additional facts and evidence not set forth in this response. Further, Ryder considers this response to be a confidential communication submitted in furtherance of conciliation covered by Rule 408 of the Federal Rules of Evidence and analogous state laws. Consequently, in the event the Commission receives a request for disclosure of this response, Ryder requests that it receive proper notification of such request so that it may seek appropriate administrative or judicial review.

Alabama    California    Colorado    Florida    Georgia    Massachusetts    Minnesota    Missouri

New Jersey    New York    North Carolina    South Carolina    Tennessee    Texas    Virginia

Constangy, Brooks, Smith & Prophete, LLP

U.S. Equal Employment Opportunity
Commission
September 1, 2022
Page 2

forklift operator. During the worst of the COVID pandemic, the Company's attendance policy was not strictly enforced due to the large number of employee absences due to illness and quarantine. As conditions improved, the Company determined that the attendance policy could and should once again be enforced. The Company therefore announced in August 2021 that effective January 1, 2022, all employees would start with a clean slate under the attendance policy and the policy would be enforced going forward. Despite this clearly-announced policy change, Mr. Johnson racked up 33.5 attendance points between January and April 2021 and received a Verbal Warning as a result. He accumulated an additional 16 attendance points during the following month and received a Written Warning in May 2022. In the meantime, Mr. Johnson applied for a promotion to Warehouse Lead. Although Ryder interviewed Mr. Johnson and gave his application due consideration, the Company did not select Mr. Johnson for the position due to his abysmal attendance and ultimately hired a well-qualified external candidate. Mr. Johnson complained to Human Resources that he was denied the promotion in retaliation for either his (alleged) prior complaints about his compensation or because he had been "mentioned" in an EEOC Charge (that had not even been served on the Company at the time of his complaint). Employee Relations thoroughly investigated Mr. Johnson's claim of retaliatory treatment, but it was not substantiated. In short, and as confirmed by Ryder's internal investigation, there is no evidence to support Mr. Johnson's discrimination or retaliation claims, and the Commission should enter a "no cause" finding and dismiss the Charges in its entirety.

I.      **Ryder's Commitment to Equal Opportunity Employment and a Workplace Free of Harassment, Discrimination, and Retaliation.**

Ryder prides itself on being an equal opportunity employer with a diverse workforce and takes its obligations under all applicable federal and state non-discrimination laws extremely seriously. In this regard, the Company has implemented a number of policies and procedures to foster a diverse and tolerant workplace. Ryder's employment policies made available to all employees at the time of hire, outline in detail the Company's equal employment opportunity policy and its policies against discrimination, harassment, and retaliation. (See Exhibit A, Ryder's Equal Employment Opportunity Policy and Affirmative Action, Policy Against Harassment, Discrimination and Retaliation, Anti-Retaliation policy, and Open Door Process). These policies include an Open Door Process that strongly encourages employees to talk with a Company official, such as a Human Resources employee or another member of management, regarding any work-related concerns they may have without fear of retaliation. (See Exhibit A). The policies also identify numerous reporting mechanisms, including an HR hotline where complaints can be lodged anonymously, if an employee has concerns or complaints of possible discrimination or unfair treatment. Accordingly, it should be clear that Ryder makes every effort to prevent workplace harassment, discrimination, and retaliation.

Constangy, Brooks, Smith & Prophete, LLP

U.S. Equal Employment Opportunity
Commission
September 1, 2022
Page 3

3 of 8

## II.    <u>Relevant Facts</u>

### A.    Mr. Johnson Works for Ryder as a Forklift Operator.

Ryder provides cutting-edge transportation, logistics, and supply chain management solutions to its customers throughout the United States. Relevant to the pending matter, Ryder provides logistics services to Mark Anthony Brands, an alcoholic beverage company, at Mark Anthony's distribution facility in Memphis, Tennessee. Midwest took over third-party logistics operations at the Memphis facility in 2019 and hired Mr. Johnson on November 4, 2019, as a Forklift Operator. When Ryder became the third-party logistics provider following its acquisition of Midwest, the Company hired Mr. Johnson on October 28, 2021, as a forklift operator, which Ryder refers to as a "Material Handler." Ryder now employs about 70 individuals at the Memphis facility, many of whom were previously employed by Midwest. As a Forklift Operator/Material Handler, Mr. Johnson is responsible for: safely operating a forklift to physically and logistically move products; pulling and preparing products for shipment; ensuring that pulled orders are free and are the correct type/quantity; and assisting with other warehouse tasks such as shipping/receiving, loading/unloading, stacking/staging, and scanning. (See Exhibit B, Forklift Operator and Material Handler Job Descriptions).

### B.    Mr. Johnson Receives Several Pay Increases and is Paid the Same as Other Employees Performing the Same Duties on the Same Shift.

Mr. Johnson's starting salary in November 2019 was $14.50 per hour. In July 2020, Mr. Johnson received a pay increase to $14.90 per hour. In July 2021, Mr. Johnson received another pay increase to $16 per hour. Then in December 2021, he received another increase to $17 per hour. In February 2022 (following the acquisition), Ryder gave pay increases to <u>all</u> warehouse employees based upon contracted rates with the Company's customer and, for the first time, implemented a $.50 differential for second shift and a $1 differential for third shift. As a result, all employees in the same job on the same shift are paid the same hourly rate, including the applicable shift differential. As a third-shift Material Handler, Mr. Johnson received a pay increase to $18 per hour plus a $1 per hour shift differential, for a total of $19 per hour. (See Exhibit C, Regular Pay History). These compensation changes were rolled out to the employees by their shift supervisors at shift start-up meetings during February 2022. In the Charges, Mr. Johnson claims he "complained" to management and HR that he was being paid less than younger employees. However, there is no evidence that Mr. Johnson ever "complained" to Human Resources Specialist Nina Nguyen about his wages; instead, he asked her for an explanation of the February 2022 pay increase, and she referred him to Group Logistics Manager Mike Bramblett. Nor did Mr. Johnson complaint to Mr. Bramblett about allegedly discriminatory pay; rather, Mr. Bramblett explained the pay increase and shift differential to Mr. Johnson more than once. Moreover, even if Mr. Johnson had complained about pay discrimination, his claim would have been without merit because, as noted above, all employees in the same position on the same shift were paid

Constangy, Brooks, Smith & Prophete, LLP

*4 of 8*

U.S. Equal Employment Opportunity
Commission
September 1, 2022
Page 4

---

the same, without reference to age.[2]

### C.    Mr. Johnson is Disciplined for Violating the Company's Attendance Policy.

When Mr. Johnson was first hired by Midwest, he received a copy of the Absenteeism Tracking System policy and acknowledged receipt of same. (See Exhibit D, Absenteeism Tracking System signed by Mr. Johnson). Under this policy, employees accrue between 0.5 and five attendance points for each instance of tardiness or unexcused absence, and discipline may be issued once the employee reaches three points. Ten attendance points within one calendar year is grounds for termination of employment. (See Exhibit D). During the worst of the COVID pandemic, Midwest chose not to strictly enforce the attendance policy because of the large number of employee absences due to illness and quarantine. As area conditions improved, however, the Company determined that its attendance policy could and should once again be enforced. In August 2021, the Company announced to all employees that enforcement of the attendance policy would resume effective January 1, 2022, and at that time, all employees would start with a clean slate, i.e., zero attendance points.

After the holiday period, Mr. Bramblett reiterated to warehouse leadership that the attendance policy should be enforced going forward. (See Exhibit E, recap of January 12, 2022, management meeting). Managers and supervisors in turn reminded employees of the change in policy enforcement during team meetings the week of January 12. Despite this clearly-announced change, Mr. Johnson accumulated 33.5 attendance points between January 1 and April 21, 2022, and on May 25 was issued a Verbal Warning as a result. Mr. Johnson disputed some of the attendance points, and Operations Manager Britt Jernigan investigated and removed any points that had been entered erroneously. However, when presented with the corrected document, Mr. Johnson still refused to acknowledge receipt. (See Exhibit F, Verbal Warning). Notably, when Mr. Johnson protested the Verbal Warning, he told Human Resources Specialist Nina Nguyen he believed the Verbal Warning was issued in retaliation for Mr. Johnson reporting an on-the-job injury on May 23. He did not mention anything about age discrimination or retaliation for complaining of age discrimination. (See Exhibit G, emails between Mr.

---

[2]    Alternatively, Mr. Johnson may be referring to a concern he claims he raised in July 2021 that temporary workers employed by Prologistix (not by Ryder) were being paid a higher starting wage than he had been. Mr. Bramblett denies that Mr. Johnson complained to him about temporary worker wages at all, much less that he complained about alleged age discrimination. In any event, at the time Prologistix had been setting wages for its own employees without reference to what Ryder employees were paid (and certainly without reference to any Ryder employee's age, of which the staffing company would have no knowledge). Ryder addressed with Prologistix the need for its employees' wages to be in line with those paid to Ryder employees as dictated by its contract with the customer. In response, Prologistix adjusted its employees' pay accordingly. Again, however, this situation had nothing to do with Mr. Johnson's or any other employee's age – indeed, Ryder's management team does not have access to temporary workers' dates of birth, and Prologistix does not have access to the names and birthdates of Ryder's employees.

Constangy, Brooks, Smith & Prophete, LLP

*Exh # 40*

*5 of 8*

U.S. Equal Employment Opportunity
Commission
September 1, 2022
Page 5

---

Johnson and Ms. Nguyen).[3/] Mr. Johnson continued to accumulate attendance points, racking up an additional 16 points between April 22 and May 23, 2022. As a result, Mr. Johnson received a Written Warning, and once again, despite supporting attendance documentation, refused to acknowledge receipt. (See Exhibit H, Written Warning). Separately, Operations Manager Britt Jernigan issued Mr. Johnson a Written Counseling for an extremely unprofessional email he sent to Ms. Nguyen when requesting documentation of his attendance points. (See Exhibit I, Written Counseling).

> **D.    Mr. Johnson is not Promoted to Third-Shift Team Lead Due to his Abysmal Attendance Record.**

In March 2022, a third-shift Team Lead position became available at the Memphis facility, and the position was posted both internally and externally. (See Exhibit J, job posting). The Team Lead job is a "working lead" position, so in addition to overseeing warehouse processes, the successful candidate also needed experience operating a forklift. (See Exhibit K, job description). More than 20 external candidates and two current employees applied for the Team Lead position. Ryder's Recruiting Department eliminated applicants who were not qualified for the position; however, six qualified external candidates and both internal candidates, including Mr. Johnson and Ronald Moore, were scheduled for interviews. Each interview was conducted by a panel of at least three individuals; in Mr. Johnson's case, he was interviewed by Operations Manager Parker Anderson, Operations Manager Britt Jernigan, Supervisor Antonio Hines, and Group Logistics Manager Mike Bramblett. Following the interview, the panel discussed whether Mr. Johnson should be promoted and unanimously decided that he should not be promoted due to his unsatisfactory attendance record. (At that time, Mr. Johnson had accumulated attendance points in excess of termination level.) Mr. Bramblett communicated this decision to Mr. Johnson on April 14, 2022. Ryder continued recruiting for the Team Lead position and ultimately hired Brandon Truitt, a highly-qualified external candidate who had 15 years of experience as a warehouse team lead and forklift operator. (See Exhibit L, resume of Brandon Truitt, contact information redacted).

> **E.    The Company Promptly and Thoroughly Investigates Mr. Johnson's Internal Complaint of Retaliatory Treatment, but it is Not Substantiated.**

On April 14, 2022, Mr. Johnson sent an email to Ms. Nguyen in which he alleged that: (1) he had been denied a promotion to third-shift Team Lead in retaliation for being "mentioned in a pending EEOC complaint" and/or because he had emailed Ms. Nguyen, Mr. Bramblett, and Mr. Jernigan "about my shift differential pay and regular hourly work pay increase"; (2) open Team Lead positions had not been properly posted "for employees to apply," nor had the Company's EEO policy; (3) the Company

---

[3/]    In this email, Mr. Johnson references being "denied a shift differential." As shown above, however, Mr. Johnson did, in fact, receive a shift differential, and he was paid the same as other third-shift Material Handlers.

Constangy, Brooks, Smith & Prophete, LLP

U.S. Equal Employment Opportunity
Commission
September 1, 2022
Page 6

6 of 8

had paid "brand new temporary workers" $17 per hour while he had only received $14.50; and (4) during a meeting two years earlier in March 2020, Mr. Bramblett stated that if employees have a problem, they might as well come tell him because if they complained to HR it would come back to Mr. Bramblett anyway. Once again, the complaint said nothing about alleged age discrimination. Ms. Nguyen forwarded the complaint to Ryder's Compliance & Ethics Team, and Adam James from Employee Relations was assigned to investigate, which he did promptly and thoroughly. (See Exhibit N, Mr. Johnson's April 14, 2022, email and Ms. Nguyen's response). After Mr. James interviewed Mr. Johnson and each of the individuals he identified in his complaint and reviewed all relevant documentation, he concluded that – relevant to the pending claims – the investigation did not substantiate Mr. Johnson's claim of retaliatory treatment.

More specifically, the investigation showed that the referenced EEOC charge was not served on the Company until after Mr. Johnson was denied the Team Lead promotion and complained to Ms. Nguyen, and the charge did not even mention Mr. Johnson. The investigation also failed to substantiate Mr. Johnson's claim that he had repeatedly complained about not receiving a shift differential and in fact showed that Mr. Johnson had received four pay increases and was making $19.00 per hour, including a $1 per hour shift differential, which had been explained to him more than once. The investigation also showed that Team Lead positions had been properly posted, as had the Company's EEO policy. In short, Mr. Johnson's claims of retaliatory treatment were not substantiated, and the investigation was concluded on May 24, 2022. Mr. Johnson has not lodged any further complaints of discrimination or retaliation.

## IV.    Analysis and Discussion

Section 623(d) of the ADEA protects employees from retaliation for opposing acts of age discrimination, or for charging, testifying, assisting, or participating in any manner in an investigation, proceeding, or litigation under the ADEA. *Fox v. Eagle Distributing Co.*, 510 F.3d 587, 590-591 (6th Cir. 2007) (*citing* 29 U.S.C. § 623(d)). To prove retaliatory failure to promote under the ADEA, Mr. Johnson must first establish a *prima facie* case by showing:  (1) he engaged in an activity protected by the ADEA; (2) he was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action. *Strouss v. Michigan Dep't of Corrections*, 250 F.3d 336, 342 (6th Cir. 2001). Mr. Johnson cannot make this showing because he did not engage in protected activity and there is no link between any protected activity and any adverse employment action taken toward Mr. Johnson.

First, there is no evidence that Mr. Johnson expressed opposition to "a violation of the ADEA" (i.e., age discrimination) at any time prior to his non-selection for the Team Lead position. *Fox*, 510 F.3d at 591. At most, Mr. Johnson expressed frustration regarding his understanding of the across-the-board pay increases and implementation of a shift differential that occurred in February 2022, but he never

Constangy, Brooks, Smith & Prophete, LLP

U.S. Equal Employment Opportunity
Commission
September 1, 2022
Page 7

7 of 8

---

alleged or even implied that he had been paid improperly or unfairly *because of his age*. It is well settled that even a "vague allegation of discrimination" is not protected activity under the ADEA; rather the employee must identify a specific employment practice that he or she believes violates the statute. *See, e.g., id.* at 591-592. Mr. Johnson failed to do so, and his *prima facie* case fails for this reason alone. *Id.* (employee's complaint about a denied promotion, which contained no reference to alleged age discrimination, was not protected activity under the ADEA). Even if Mr. Johnson's various questions and communications about his pay rate were protected under the ADEA (which they are not), his claim would fail nevertheless because there is no evidence of a causal link between these communications and Mr. Johnson's non-selection for the Team Lead position. As shown above, Mr. Johnson was not selected for the promotion because of his abysmal attendance record — he was already above termination level under the attendance policy when he interviewed for the Team Lead position. Although Ryder later hired a younger external candidate, Brandon Truitt, for the position, the undisputed evidence shows that Mr. Truitt was eminently well-qualified for the role, with more than 15 years' experience as a team lead and forklift operator. *Cf. Provenzano v. LCI Holdings*, 663 F.3d 806, 815-816 (6th Cir.2011) (employer's belief that another candidate is better-qualified for position is legitimate, nondiscriminatory reason for adverse promotion decision).

In short, Mr. Johnson has not demonstrated any evidence of discriminatory or retaliatory animus on the part of any of the promotion decision-makers, and to the contrary, the promotion non-selection was supported by undisputed evidence regarding Mr. Johnson's attendance record. Because Mr. Johnson cannot establish all the elements of the *prima facie* case, his retaliation claim fails as a matter of law. *See, e.g., Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582-83 (6th Cir. 1992) (absent identification of an appropriate comparator who received more favorable treatment or other evidence of discrimination, courts will not second-guess employers' reasonable business decisions); *Bender v. Hecht's Dept. Stores*, 455 F.3d 612, 627-628 (6th Cir. 2006) (same); *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008) (absent a showing of extremely close temporal proximity or other evidence of retaliatory animus, plaintiff cannot establish causal connection element of retaliation claim).[4]

---

[4]     In the conclusion of the Charge, Mr. Johnson states that he was subjected to age discrimination; however, the body of the Charge only discusses alleged retaliation and provides no details regarding any alleged act of age discrimination. The only adverse employment action toward Mr. Johnson, and the only one he mentions in his Charge, is his non-selection for the Team Lead position. To the extent Mr. Johnson claims this decision was motivated by age discrimination, his claim fails. As shown above and in Exhibit L, Mr. Johnson was not promoted because of his abysmal attendance record, and the younger individual who was ultimately hired for the position was extremely well qualified.

Constangy, Brooks, Smith & Prophete, LLP

U.S. Equal Employment Opportunity
Commission
September 1, 2022
Page 8

---

## V.    Conclusion

For the foregoing reasons, Ryder respectfully submits that Mr. Johnson's claims are without merit and asks the Commission to enter a "no cause" finding and dismiss both Charges.

Very truly yours,

*/s/ Ashlee M. Ligarde*

Ashlee Mann Ligarde

AL
Enclosures

*Our team is growing!*
*Ryder is hiring Warehouse Team Lead in Memphis, TN!*

Warehouse leads are responsible for the operation and supervision of all warehouse activities. They ensure all employees and activities are operating within designated safety standards, as well as make sure all items received and processed in accordance with proper procedures.

## *About the position:*

- Consistent pay: $19.80 per hour
- Schedule: Monday - Friday, 11:00 pm - 7:00 am
- Requirements:
  - High School Diploma
  - 2+ years' experience working in a warehouse environment
  - Excellent written & verbal communication skills
  - Proficient in MS Excel, MS Word & MS Outlook
  - Strong attention to detail
  - Ability to multi-task & prioritize projects
  - Requires some heavy lifting, as well as the ability to operate multiple types of warehouse vehicles and hand tools
- Other requirements: Must be able to pass a criminal background check and drug test.

**Job Duties:**

- Processing and requisitioning supplies
- Delivering, processing, and packaging merchandise for shipment; and assisting with any security measures necessary
- Ensure sufficient staffing to handle their workload during shifts, as well as review and ensure all work is conducted in the proper manner
- Responsible for communication among various personnel, departments, and vendors, helping resolve problems and questions in a timely manner Read More...Checking in-bound and out-bound freight for 100% accuracy
- Training new employees on practices and procedures
- Ensure compliance for housekeeping and stock keeping, Prevention of damage to customer products, space utilization, report areas where improvement is necessary
- Ensure products are stored properly in bays in straight stacks, not along or in aisles ways. Supervise the cleaning of warehouse restrooms and break areas
- Ensure warehouse is secure and property is protected. All emergency exits should be unobstructed and secure
- Monthly safety meeting attendance is required along with inspections and improvement suggestions for correcting safety hazards
- Make recommendations to Facility Manager with regards to facility operations

#LI-Post
#FB
#snagajob





3



*Exh. 42*

*1 of 3*

## rebuttal

From:  Francois Johnson (francois.johnson@ymail.com)

To:    joseph.sparkmon@eeoc.gov; francois.johnson@ymail.com

Date:  Thursday, April 6, 2023 at 06:04 PM CDT

  johnson eeco 2nd charge rebuttal.docx
21.5kB

Exh #
42
2 of 3

Mr. Johnson,

April 6, 2023

Case No. 490-2023-01321

<div align="center">Position rebuttal.</div>

Tennessee Rule of Evidence 408 states, "Evidence of (1) furnishing or offering to furnish or (2) accepting or offering to accept a valuable consideration in compromising or attempting to compromise a claim, whether in the present litigation or related litigation, which claim was disputed or was reasonably expected to be disputed as to either validity or amount, is **not admissible** to prove liability for or invalidity of a civil claim or its amount or a criminal charge or its punishment."

This is not a settlement offer, this is a gathering of information, and I do very much intend to use this during the discovery process, in the event this goes to court. I will be commenting on retaliation by wrongful garnishment, denied employment, denied severance pay. Defendant acquiescence, fail to address only the new charges by regurgitating the talking points on the 1st charge.

1.) it was a bad pandemic, but the defendant refuses to mention "that a notice to support their statement that a notice was placed by the employee time clock during the pandemic event. Johnson uploaded a screen shot of the notice after receiving reprimands in April 2022, to substantiate this claim.

2). On January 1, 2022, there was not meeting on the topic of the attendance policy being enforced, because if that was the case why was the notice still posted until June 10, 2022, on which I took a screenshot and sent the administrators an email asking about the policy. These are the dates I sought a answer and no response was given. May 25,2022 when I received my first reprimand, June 14,2022, June 15,2022, I asked HR- Ms. Nguyen and she never responded at any time about when the policy went into enforcement, in the June 15,2022 email. June 16,2022, July 15,2022, July 24,2022. I already uploaded these emails.

3). I was never told that the policy was being enforced as they stated, and they provided nothing to substantiate this statement, not even a alleged actual date. Every meeting would be associated with a sign in sheet showing acknowledgment of a specific meeting. But EEOC can see the connection that Johnson reprimands can only after reporting denied promotion on or about April 14 ,2022.

4). The defendant only notes attendance, but no performance issues, which is what this charge is about, has not provided any performance reprimands, but refused to transfer Johnson to the Olive Branch Ryder warehouse as the other non-supervisors with attendance and performance issues, which Johnson provided to this office. Johnson was retaliated also because HR and Bramblett told the Olive Branch office Johnson had a attendance and performance problem. This Johnson provided a copy of that email to this office.

5). Ryders Ms. Nugyen the in-house Human Resources was never at any on Johnson reprimands meeting, but at some point, signed stamped her name, but EVERY REPRIMAND SIGNATURE LINE WAS FOR THE HR REPRESENTATIVE. Clearly Ryder did not have a safeguard in place, and allowed Ms. Nguyen to not

<div align="center">1</div>

Exh # 42

3 of 3

protect Johnson, and many of Johnson issues sent to Nguyen were never answered. Nguyen has never communicated to Johnson when the attendance policy was back into enforcement.

6). Ryder's compliance department in an email told Johnson, that the complaint he filed and the results was for their office use, and Johnson was not privileged to the results, which proves Ryder tolerates discrimination, and allows harassment of its employees causing a hostile adverse action, and Johnson has forwarding emails.

7). Because Johnson was trained and overseen the operations in the presence and absence on a supervisor or shift lead, Johnson was qualified, but the application of a at the time of the denial, and at the time of the reprimands that followed, Johnson was qualified for the job, had no performance reprimands, clearly this office can see that "but for Johnson reporting his denied promotion, complaining about pay, even if neither was true, but for these claims, Johnson was retaliated against.

8). The retaliation continued, because Johnson check was garnished by the word of an attorney, who did not provide court order, Johnson complained, and Defendant Ryder never provided the court order warranting the garnishment causing Johnson financial distress. But Defendant has not addressed this claim in its position statement.

## In Conclusion

The defendants mythically evaded the garnishment claim, the evading of their posting by the time clock that was present before and after the reprimands, which Johnson provided a document to collaborate each of these claims of retaliation, and denied promotions.

Wants this office to take its words, without verification of signed meetings sheet by a supervisor or manager, that Johnson knew and acknowledged that as of January 1, 2022, and without removing the posting by the employee time clock which was binding and relevant at all the instance, that the policy was reinstated. Hearsay, is not admissible, if not corroborated by a document, but Johnson uploaded the screenshots, and consistency in seeking a date, by not even Mr. Bramblett would answer to prove his action, Johnson was in fact retaliated against. The defendant did not address the younger employees that transferred to the Olive Branch warehouse, or that everyone had to apply for employment with the Olive Branch Ms. Warehouse, only transfer, and their attendance or performance was a factor, because as the defendant stated , Johnson was hired to work for Ryder, after Midwest sold out to them,

2

## In reference to my rebuttal

from:    Francois Johnson (francois.johnson@ymail.com)

to:    joseph.sparkmon@eeoc.gov

date:    Friday, April 7, 2023 at 07:01 AM CDT


Please use  both of my responses, even Carly L. BALL never addressed the attendance policy

Sent from Yahoo Mail on Android

Case 2:23-cv-02554-SHL-atc    Document 1    Filed 08/31/23    Page 97 of 112
PageID 97

Exh. #43
2 of 2

# My charge

From:  Francois Johnson (francois.johnson@ymail.com)

To:  joseph.sparkmon@eeoc.gov

Date:  Friday, April 14, 2023 at 08:01 AM CDT

My charge lacks that I was not transferred because of my job performance and attendance,  and my wages were garnished and that the company did not provide proof of a court judgment. They must be Investigatied .If those things are not I mentioned investigated , if and when I file my claims in court, the company will deny those claims on the grounds that they did not have due process , in collect and respond to those claims. I can send you the 6th circuit court arguments on.this topic, please and thank you. They MUST RESPOND TO THIS IS THIS CHARGE. I MISSED  these facts because I did fill out the eeoc questionnaire and complaint form. Which explains ,why they didn't mention those facts, that are supported by emails I sent to you.

Sent from Yahoo Mail on Android

# RE: My garnishment

Mike Bramblett [C] (mike_bramblett@ryder.com)

francois.johnson@ymail.com; Nina_Nguyen@ryder.com

Date    Thursday, September 1, 2022 at 01:12 PM CDT

Good afternoon Francois,
On April 24, 2022, we mailed to you the document that you reference in your note below.
I have a picture of the mailing.
Thanks.
Mike

**From:** Francois Johnson <francois.johnson@ymail.com>
**Sent:** Thursday, September 1, 2022 12:29 PM
**To:** Nina Nguyen [C] <Nina_Nguyen@ryder.com>; Mike Bramblett [C] <Mike_Bramblett@ryder.com>
**Subject:** My garnishment

**RYDER CAUTION:** This email originated from outside of the organization and may have malicious content. Be cautious when clicking on links or opening attachments.

Mike i just noticed that this document was served on March 22,2022. This document is not signed by a judge as yall can see. The box where it ssys. " Judgment fir the plaintiff is not signed , no date , no division. Now im going to give you a week from today to let the company attorney look at this document, and after that , i will be filing leagal documents to support my position. Show me a judge signed document or i have no other choice, but to protect my wages. Thanks

Sent from Yahoo Mail on Android

The information contained in this electronic communication and any accompanying document is confidential, may be attorney-client privileged, and is intended only for the use of the addressee. It is the property of Ryder System, Inc. Unauthorized use, disclosure or copying of this communication, or any part of it, is strictly prohibited and may be unlawful. If you have received this communication in error, please notify the sender immediately by return email, and destroy this communication and all copies of it, including all attachments. Electronic communication may be susceptible to data corruption, interception and unauthorized tampering and Ryder disclaims all liability of any kind for such actions or any consequences that may arise directly or indirectly therefrom.

*Exh # 45*

## Garnishment, signed retention documents

From: Francois Johnson (francois.johnson@ymail.com)

To: Carly_L_Ball@ryder.com; francois.johnson@ymail.com

Date: Friday, September 23, 2022 at 08:06 AM CDT

Morning Carly Ball, Im sending this email again because the email on the letter given to us by mike bramblett was wrong and probably on purpose. But anyways, I would like you to check and provide me a copy of the court document showing me that a judge signed ordering me to pay a garnishment, the copy mike showed me is not a judge signed copy. This is what Im asking you to provide, I am being ignored, but these funds are weekly being deducted by the company without court justification, and it is just plain retaliation against me.

I have sent Mike and the HR Nina over (3) times and asked them to give me this proof, and I feel this is retaliation from Nina because of the investigation into her about my claims of her not performing her job, on things of concern by me and other employees.

I need my copy of my retention documents I signed on Thursday morning in your presence , mike and mine. Mike went to give me a copy ,but he didn't, so if you could get me a copy by this email I would appreciate it, thanks.

Lastly ,I am asking you to independently look into why I am a dollar short in pay. I work on 3rd shift,and i suppose to be getting paid a dollar shift differential, but the employees on first shift makes the same as myself, and do not work on 3rd shift. I make 20.50 and they are making 20.50, which means I am supposed to make 21.50 because of shift differential. Which is what the chart shows, but Cleary is not what I am being paid. So i have been getting short pay since February 2022, and seeks back pay. Thank you.

Sent from Yahoo Mail on Android

8/10/23, 11:25 AM    Case 2:23-cv-02554-SHL-atc    Document 1    Filed 08/31/23    Page 100 of 112
Yahoo Mail - RE: My separation letter sent yesterday morning    EХН#    46
PageID 100

**Midwest Warehouse**
**& DISTRIBUTION SYSTEM**

## EMPLOYMENT SEPARATION NOTICE

| | | Location: |
|---|---|---|
| Employee's Name: | | 28 Memphis |
| Francois Johnson | | Name of Supervisor: |
| Incident Date: | Termination Date: | Eddie Williams |
| | 10/28/22 | |

**Nature of Infraction:**

| | | |
|---|---|---|
| ☐ violation of work rules | ☐ excessive absenteeism | ☐ insubordination |
| ☐ violation of company policy | ☐ excessive tardiness | ☐ substandard work |
| ☐ violation of safety rules | ☐ excessive early departure | ☐ Resigned |
| ☐ ___ violation | ☐ other attendance issue | ☒ other – see below |

**Description of Infraction(s):**

**Termination:**

| Last Date Worked: | | Eligible for Rehire |
|---|---|---|
| 10/27/22 | | ☒ Yes    ☐ No |

**Remarks:**

**Reduction in Force due to customer drawdown of operations.**

| Supervisor's signature: _Mike Furst_ | Date: _11/29/22_ |
|---|---|
| HR Signature: _4 ody Bell_ | Date: _11/1/22_ |

HRF 704-2



EXA # 47

**Ryder**®

9/20/2022

Francois Johnson
6740 Pheasant Walk Cove

Re:  Retention Bonus

Dear Francois,

As you are aware, Ryder is losing the Mike's Hard Lemonade business in Memphis, TN.  We must continue to deliver excellent service to Mike's Hard Lemonade during this shutdown; it is critical that we maintain our trained workforce through the transition.

Ryder appreciates your hard work and dedication and will continue to need your expertise to assist us in a successful shutdown of the Mike's Hard Lemonade account.  Therefore, we are offering a retention payment to you, if you remain continuously employed with Ryder for the October production period.  Your responsibilities include, but are not limited to, current duties, the overall servicing of the customer, and the shutdown of the business.  The payment amount will be $1,500.00 (less applicable taxes) to be awarded monthly for your fulfillment of these and other duties as may be determined by management.

This payment is contingent on your being an active employee in good standing with no significant performance issues during the remainder of your employment and the successful accomplishment of the duties within your control.  If the conditions in this letter are met, then the retention payment will be made on your last regularly scheduled payroll.

Ryder may, at its sole discretion, terminate your employment earlier than the actual shut-down date, and pay you the retention bonus amount at that time should the other conditions in this letter be met.

Notwithstanding the foregoing, you acknowledge that this letter agreement does not constitute a contract for employment through the completion of the Mike's Hard Lemonade account shutdown, and that you remain and will continue to be an employee at-will who can be terminated at any time with or without cause.  If you resign or are terminated for any reason other than the implementation of the shutdown plan, you will not receive your retention bonus payment.

The parties agree that they shall keep the terms of this letter agreement confidential and that they will not disclose them to or discuss them with any person or entity other than legal counsel, financial advisor, officers and directors (or their designates), and in your case, your spouse or domestic partner. All such persons will be advised of the confidentiality provisions of this letter agreement and shall agree to abide by it.  You also agree not to make any remarks disparaging the conduct or character of Ryder System, Inc. or any of its subsidiaries, affiliates, agents, employees, officers, directors, successors or assigns.

Fwd: FW:

Exhibit 48

1 of 2

From  Marquita Weaver (marquitaweaver529@gmail.com)

To     francois.johnson@ymail.com

Date.  Monday, October 18, 2021 at 12:34 PM CDT

---------- Forwarded message ---------
From **Marquita Weaver** <MarquitaWeaver@midwestwarehouse.com>
Date: Mon  Oct 18, 2021, 12:31 PM
Subject: FW:
To: marquitaweaver529@gmail.com <marquitaweaver529@gmail.com>

---

From: Mike Bramblett
Sent: Monday, October 18, 2021 10:23 AM
To: Marquita Weaver; Britt Jernigan; Nina Nguyen; Kevin Joyce
Subject: RE:

Marquita,
I just saw this email from the weekend. or I would have addressed it during our meeting this morning.
The shift in question where Jamarcus moved the 2 pallets in question was not on your shift.
I sent a follow up note (attached) that states the corrected date.
However. we will be glad to provide Jamarcus with the Video Footage as well as the digital trail during his
developmental counseling.
I will be glad to discuss the other points that you have made. Let's set up a time to do so that is convenient for you.
v/r,
Mike
Mike Bramblett
Midwest Warehouse
Tel: 901.969.1875 x3405
Cell: 865.591.6486
mikebramblett@midwestwarehouse.com<mailto:mikebramblett@midwestwarehouse.com>
www.midwestwarehouse.com<http://www.midwestwarehouse.com/>

"Friendly Service....Exceptional Results"

[logo] [facebook] <https://www.facebook.com/midwestwarehouse> [LinkedIn Logo]
<https://www.linkedin.com/company/midwest-warehouse/about/>

From: Marquita Weaver
Sent: Monday, October 18, 2021 3:32 AM
To. Mike Bramblett: Britt Jernigan; Nina Nguyen; Kevin Joyce
Cc: Marquita Weaver
Subject. FW:

From: Marquita Weaver
Sent: Monday, October 18, 2021 3:26 AM
To: 'marquitaweaver529@gmail.com' <marquitaweaver529@gmail.com<mailto:marquitaweaver529@gmail.com>>
Cc: Marquita Weaver <MarquitaWeaver@midwestwarehouse.com<mailto:MarquitaWeaver@midwestwarehouse.com>>
Subject:

1.Mike Bramblett this is your second time threatening my job.
10/10/2021 which was a Sunday night going into 10/11/2021 Monday morning @ 6:45 am.
2.When I was move to 3rd shift. Mike you told me that I have employee on that shift. I'm supposed to have 3 dedicated forklift operators on my shift. Again inconvenience to me and set up for failure. I have Francisco Johnson who volunteers every weekend.
3.Mike I will not harass Jamarcus Arnold for you which is the 3rd shift lead. You have accuse Mr. Arnold on 4 different occasions. That he have done something wrong.
So I ask you on every point to show some type of video footage (proof). That Mr. Arnold took 2 pallets to the drop lot from the grief area that was still in
active inventory. After asking for proof now I have to have a meeting with you in the conference room on Monday 10/18/2021. I also noticed that I
was sent 2 email back to back with Nina(HR) being CC in on the email. Nina was not on any of the previous email that was sent.
4.It seem to me that 2nd shift is not required the same responsibility that you required from me.
5.I feel that you are harassing me again.

---------- Forwarded message ----------
From: Mike Bramblett <MikeBramblett@midwestwarehouse.com>
To: Marquita Weaver <MarquitaWeaver@midwestwarehouse.com>, Britt Jernigan
<BrittJernigan@midwestwarehouse.com>
Cc: Tony Hines <TonyHines@midwestwarehouse.com>, Keith Holland <Keith.Holland@midwestwarehouse.com>
Bcc: .
Date: Fri. 15 Oct 2021 12:12:57 +0000
Subject: RE:
Please see the highlight below. The dates were 10/13 and 10/14.

Mike Bramblett
Midwest Warehouse
Tel: 901.969.1875 x3405
Cell: 865.591.6486
mikebramblett@midwestwarehouse.com
www.midwestwarehouse.com

"Friendly Service.,..Exceptional Results"

 

From: Mike Bramblett
Sent: Friday, October 15, 2021 7:12 AM
To: Marquita Weaver; Britt Jernigan
Cc: Tony Hines; Keith Holland
Subject: RE:

Thanks for the note Marquita,
If we find errors today associated with the work in the Grief Area that Jamarcus did last night, he will not be allowed to work in the Grief Area or on Project Work associated with Destruction Loads going forward.
There were significant errors found yesterday that were directly associated with Project work that Jamarcus performed on 3rd Shift on 10/13 and 10/14.

Exh I '49

1 of 2

## RE: Garnishment papers

Nina Nguyen [C] (nina_nguyen@ryder.com)

francois.johnson@ymail.com

Kevin_Joyce@ryder.com

Date: Thursday, April 21, 2022 at 10:17 AM CDT

Francois,

We recently received and completed the document. As you can see, I sent  t to you immediately after completion. For any other questions, please reach out to the court.

**Nina Nguyen**
Human Resources Specialist
Consumer Packaged Goods
Phone (901) 969-1875 x3417
Nina_Nguyen@ryder.com
www.ryder.com



SUPPLY CHAIN  |  DEDICATED TRANSPORTATION  |  FLEET MANAGEMENT SOLUTIONS

**From:** Francois Johnson <francois.johnson@ymail.com>
**Sent:** Thursday; April 21, 2022 10:04 AM
**To:** Nina Nguyen [C] <Nina_Nguyen@ryder.com>
**Subject:** RE: Garnishment papers

**RYDER CAUTION:** This email originated from outside of the organization and may have malicious content. Be cautious when clicking on links or opening attachments.

Thank you for the document, i just want to know why i wasn't informed by you, at anytime, that there had papers served on you and the company and , neither you, or mike or my supervisor informed me about it. This is unacceptable. Now my check is fixing to be garnished and i could have s  pped it. if given the papers after u got served my papers.

Sent from Yahoo Mail on Android

On Thu. Apr 21, 2022 at 9:28 AM, Nina Nguyen [C]

< na     .      yder.com> wrote:

Exh # 40

2 of 2

GARNISHMENTS ARE IN EFFECT FOR 180 DAYS FROM DATE OF SERVICE.

(a) What is the gross pay before any deductions? $ 698.30
(b) ... deducted from pay for Social Security and Federal Income Tax? $ 147.49
(c) Subtract (b) from (a). This is disposable earnings. $ 550.76
(d) ... paid (once every week) once every two weeks, ... a month, or two times per month? $ ____
(... minimum hourly wage)
... week, enter 30 X FMW (d1) $ 217.50
... every two weeks, enter 30 X FMW X 2 (d2) $ ____
... per month, enter 30 X FMW X 2.166667 (d3) $ ____
... month, enter 30 X FMW X 4.333334 (d4) $ ____
... (d) from (c). ... STOP, NO WAGES MAY ... $ 333.26
... $ 137.69
... dependent children have ... (16) living in Tennessee? 1
... by $2.50 per week ($5.00 if wages ... two weeks, $5.42 if paid two times ... $10.83 if paid once per month) $ 2.50
(j) Subtract (i) from (h). This is the amount of wages without ... If this amount is $0 or less, nothing ... withheld from wages. $ 135.19

□ No Longer Employed Terminated ________
□ ... ________
□ ... Due Employed □ No Account
□ ... Earnings Less than Exemptions ...

I certify under penalty of perjury that the above information is true and correct on this ______ day of ________ 20______.

General Sessions Civil Court
... Box ...
Memphis TN 38103

... judgment obtained ... 29, 20... the sum ... hand same ... executed ...

________________________ Name

________________________ Title

JUDGMENT ... the PLAINTIFF ________
... GARNISHEE ________
... Scire facias may issue.
This ______ day of __________, 20______.

JUDGE ________ DIV. ________

Nina Nguyen 04/21/2022

GENERAL SESSIONS

... GARNISHMENT

... Corporation.

PLAINTIFF ... 77285
Memphis, TN 38187

VS

DEFENDANT FRANCOIS JOHNSON

... Distribution System
... Challenge Dr STE 101
Memphis TN 38115

... Defendant.

| | |
|---|---|
| ... | $10,986.50 |
| ... | $1,148.78 |
| Cost | $183.50 |
| Credits: | $.00 |
| ... Judgment: | $12,318.78 |

Having ... according to law, I hereby make ... is true to the best of my knowledge ...

________ D.C.

... 9 2021
________, 20______

... used for that purpose
7/15/21

## Re: Garnishment, signed retention documents

Francois Johnson (francois.johnson@ymail.com)

carly_l_ball@ryder.com; mike_bramblett@ryder.com; nina_nguyen@ryder.com; janice_brandner@ryder.com; parker_anderson@ryder.com; tony_hines@ryder.com; marquita_weaver@ryder.com francois.johnson@ymail.com

Date Friday, September 30, 2022 at 01:07 PM CDT

Carly, i asked you to email me a copy of the court order ordering me to pay this garnishment that is coming out of my check, it is apparant that payroll, or Human Resources, nor does Mike as representatives of Ryder has a court ordered document to prove that this is a lawful reduction of my pay weekly, and is clearly retaliation towards me based on my EEOC charge against the company. because you possess the document to do so. You are choosing to do so based on an attorney letter. You and your attorney have accepted this letter and this is causing me a hardship. during a time of cutting shift hours. Again the fact you are calling and not providing court ordered evidence to support your action proves the fact. So thanks for nothing. Have a marvelous weekend. But if you have information on the issue of $1.00 shift differential from first shift. please email your finding. because every conversation verbally with yall representative is meant to be a secret admission, but a open non-admission. I have passed this retaliation on to the EEOC Representative. Also when ever I put in to request PTO 40 hrs requested, mike and payroll never send me a notice of acceptance, but denyed my 40 hrs , paid me 10 hrs , constantly getting it wrong on purpose, and these suppose to be smart people, ran this company into the ground, and now good employees have to suffer for their failure as leaders. Its like the blind leading the blind. i am so stressed out right now. my bills are high, my pay is low, and being retaliated on from all work angels. Trying to constructively run me off the job, even when its getting shut down because of the lack of competent management. This is frustrating. Carly I will ONLY COMMUNICATE THROUGH EMAIL. MY UNDERSTANDING IS SCREWED UP RIGHT NOW. At least in written form I can meditate on the wording. Excuse any typo's .my head hurts.

Sent from Yahoo Mail on Android

On Fri, Sep 30, 2022 at 11:59 AM, Carly L. Ball
<Carly_L_Ball@ryder.com> wrote:

Hi Francois

Please give me a good number to reach you on. Thank you.

Get Yahoo for iOS

**From:** Francois Johnson <francois.johnson@ymail.com>
**Sent:** Thursday, September 29, 2022 2:07:36 PM
**To:** Carly L. Ball <Carly_L_Ball@ryder.com>
**Subject:** RE: Garnishment, signed retention documents

**RYDER CAUTION:** This email originated from outside of the organization and may have malicious content. Be cautious when clicking on links or opening attachments.

Carly as it relates to that garnishment, I need to see a court order, not a conversation, My money is being taken, I had that coversation with Mike. I need to see a COURT ORDER DOCUMENT. SO I want waste your time. Email me that document. I have been garnishment in the past ,and i was presented with a court order. The document mike sent me as stated was a process server and attorney signed document. that doesn't reflect a judge ordered that the " defendant " me , was ordered to pay a set amount to a plaintiff. Please and thank you.

Sent from Yahoo Mail on Android

On Thu. Sep 29. 2022 at 12:27 PM. Francois Johnson
<francois.johnson@ymail.com> wrote:

Yes. that will be fine

**FAQ**

**Support | Who is my HR Support?**

The team is committed to supporting you during this transition. Carly Ball is your HR Business Partner, her contact information is below. Please find HR sign up sheet within office if interested in setting up a meeting.

Email: Carly_L_Ball@ryder.com

Phone: (630) 739-6760 x 4001

**Careers | Where can I find other career opportunities at Ryder?**

All Ryder's job openings will be posted on our Ryder Career website below. If you are interested in a position please reach out to Carly Ball HR Manager and she will assist.

https://ryder.careers.com

**Timeline | When will I find out if I am affected by ramp down?**

Management will be meeting with all employees on a 1v1 basis by next Friday, September 23rd to discuss.



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Memphis District Office**
1407 Union Avenue 9th Floor

Memphis, TN 38104
(901) 685-4590

Website:

04/27/2022

MID WEST WAREHOUSE & DISTRIBUTION SYSTEM
5625 Challenge Drive

Memphis, TN 38115

**Via Respondent Portal.**

Re:    Ms. Marquita Y. Weaver v. MID WEST WAREHOUSE & DISTRIBUTION SYSTEM
EEOC Charge No.: 440-2021-07195

Respondent is hereby requested to submit the following information and records relevant to the subject charge of discrimination. The Commission is required by law to investigate charges filed with it, and this request constitutes a part of the investigation. Failure to respond by the identified deadline could result in the issuance of a subpoena, pursuant to the laws that we enforce, or an adverse inference finding of discrimination against the Respondent.

This request for information does **not** necessarily represent the entire body of evidence which the EEOC needs to obtain during the investigation. You are reminded to preserve all documents[1], applications, applicant flow logs, new hire kits, personnel files, personnel records and electronic records relevant to this action until final disposition. Any and all information related to this Request for Information, including any and all documents[1] and emails related in any way, are considered relevant and must be preserved under the EEOC's record-keeping regulations. The information will only be disclosed in accordance with 29 C.F.R. 1601.22, or otherwise made public if the matter results in litigation.

If your organization wishes to submit additional evidence which you believe will more fully support your position, please submit this evidence along with the attached requested information on or before: **05/27/2022**

Thank you in advance for your prompt attention to this request. If you have any questions, you may contact the assigned staff person listed in the Portal.

The following dates are considered the relevant period for this Request for Information:

---

[1] The term "**document**" used in this Request for Information is used in its broadest sense and means the complete original or a true, correct and complete copy and any non-identical copies (whether different from the original because of notes or comments made on or attached to such copy or otherwise) of any written, graphic, typed, printed, filmed, recorded or electronic data, published or unpublished, no matter how produced, recorded, stored, or reproduced (including computer stored or generated data, together with instructions or programs necessary to search and retrieve such data), including, without limitation, any writing, letter, telegram, memorandum, note, electronic mail or message, telephone message, telephone or toll call record, statement, book, handbook, appointment book, calendar, minutes or record of meetings, report, manual, study, analysis, summary, log, digest, record, bill, statement, voucher, working paper, chart, graph, table, drawing, photograph, videotape, audio recording (including telephone answering machine messages), diary, tabulation, data sheet, directive, standard, pamphlet, brochure, circular, advertisement, announcement, application, list, permit, survey, punch card, witness statement, note of interview or communication or any other data compilation in the possession, custody, or control of Respondent, including all drafts of such documents.

Exh # 53

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Memphis District Office**
140? Union Avenue, 9th Floor
Memphis, TN 38104
(901) 685-4590
Website:

## NOTICE OF CHARGE OF DISCRIMINATION

(This Notice replaces EEOC FORM 131)

04/27/2022

**To:** Nina Nguyen
HR Generalist
Ryder
5625 Challenge Drive

Memphis, TN 38115

This is notice that a charge of employment discrimination has been filed with the EEOC against your organization by Marquita Y Weaver under: Title VII of the Civil Rights Act of 1964 (Title VII). The circumstances of the alleged discrimination are based on Retaliation, Sex, and involve issues of Wages/Compensation, Harassment, Terms/Conditions, Seniority that are alleged to have occurred on or about 06/28/2021

The Digital Charge System makes investigations and communications with charging parties and respondents more efficient by digitizing charge documents. The charge is available for you to download from the EEOC Respondent Portal, the EEOC's secure online system.

Please follow these instruction         view the charge within ten (10) days of receiving this Notice:

1.  Access the EEOC's secured online system at https://arc.eeoc.gov/rsp/login.jsf
2.  Enter this EEOC Charge No.: 440-2021-07195
3.  Enter this password: sLoHckQ82

Once you log into the system, you can view and download the charge, and electronically submit documents to EEOC. The system will also advise you of possible actions or responses and identify your EEOC point of contact for this charge.

If you are unable to log into the EEOC Respondent Portal or have any questions regarding it, you may send an email to MEMPINTAKE@EEOC.GOV.

Pto

From   Francois Johnson (francois.johnson@ymail.com)

      carly_l_ball@ryder.com; janice_brandner@ryder.com; parker_anderson@ryder.com

      Thursday October 6, 2022 at 04:43 PM CDT

Carly can you explain to me, why are payroll  still taking my pto  without  me requesting it, and making me have 40 hrs ,
Carly do Rdyer guarantee  me 40 hrs a week? If not why are yall taking my pto. when the reason I didn't get 37.5 hrs is
because of low volume.  Why are the same people still being allowed to retaliate against me,  accessing my pto. for the
company lack of warehouse work, and your not doing nothing about it.

Sent from Yahoo Mail on Android

Exh # 55

## Short term disability

From:  Francois Johnson (francois.johnson@ymail.com)

To:  janicebrandner@midwestwarehouse.com

Date:  Monday, February 1, 2021 at 10:50 AM CST

Morning  Janice.  this is Francois Johnson I work for mid west in Memphis Tn. so now since I've been paid the 80 hrs under the covid plan.  If that's all now I need to start my short term disability insurance .

Sent from Yahoo Mail on Android

Case 2:23-cv-02554-SHL-atc Document 1 Filed 08/31/23 Page 112 of 112 PageID 112

*Exh # 56*

## Days off, permanent employees have seniority, shift differential, over time

From   Francois Johnson (francois.johnson@ymail.com)

To     mikebramblett@midwestwarehouse.com

Date   Tuesday, September 14, 2021 at 08:33 PM CDT

Mike on today i received a text telling me no work tonight. But i was told that same crap last week, and that was not correct. temporary employees did work. Mike its bad enough thst you paid the same temporary employees $16, and $17 fresh off the bus for more than 8 months, with no performance record of job performance, no attendance performance. and not more mid west job knowledge , meaning i worked inventory over 2 years, load trucks out for inventory, and off loaded for inventory. And worked on the dock, even though i was in inventory. And i made $14.90 and did all of that and I'm senor to those guys, as a permanent employee. So now with all that being said. Since my tenor i have worked Monday thru friday, then Tuesday through Saturday, but that was my option to work Tuesday through Saturday.

You are cutting permanent employees time,but u are letting temporary employees still work over time, you have janitor(s )on every shift, and they are still getting over time after you told me not to that . after u told me not to work over time. U are not being fair nor transparent as u like to say. .but Your action are contradictory. Mike i was a union steward for 19 years for Teamsters local 667 for the job I worked for 20 yrs. In other words I'm not new to this , started at age 25, I grew to this knowledge.

So i am well versed on employment law, and other laws as well.

To ask someone to scratch your back ,and you not scratch their back is an insult to an injury.

Now when Parker texted me ,he asked me since i was a senior employee .what shift i wanted . i selected Monday through Friday 11pm to 7 am.

So i dont know your strategy, but Francois Johnson being told not to come in during the week ,and not asked , and then being forced to make up my time on the weekend is not exceptable. The weekend does not make sense to me, to leave my family for regular pay, is not for me. As i explained to you months ago. The temps on 3rd shift can work the weekend , for the regular pay. I have worked my butt off for mid west . to prove my value, you hounded Tikita to let you move me to work the dock, after i came back from covid leave, you asked me to go back to inventory as a cycle counter ,i turned you down, but you put me back inder Keirh Hollad. i ket u slid on that and help clean up the mess on inventory, yes i got a pay check, but folks fresh off the street was paid more than me during thst time , because word had gotten out, but it was not validated until you told us in thst meeting , dsys before i got my raise to $16.00.i found this out once i got that raise, and before thst i was walking with my head up high until I found that out. Now transparent is out the window.

So I'm gonna need my senority to be respected on this 3rd shift , and 3rd shift has a shift differential. My 2 son worked there, 1 on 2nd shift janitor,and on 3rd shift lift operator so i know this for a fact. Tyler Johnson. Franshun Johnson, and Im not getting my shift differential, i need you to look into that.

I love my job, but these past months have been exhausting, embarrassing. and i should not recieve any back lash according to the harrassment policy training Parker had tnis morning.

No temporary employees ,or less senior employees should get over time . In the past Parker Anderson gave it out ,by seniority. lets get back to it. This time keep it transparent

Sent from Yahoo Mail on Android